THE PEOPLE OF THE STATE OF NEW YORK ex reL. THE INTER-NATIONAL NAVIGATION COMPANY, Respondent, *v.* EDWARD P. BARKER et al., as Commissioners of Taxes and Assessments of the City of New York, Appellants.

TAX — SHED ERECTED BY LESSEE ON PIER LEASED FROM CITY OF NEW YORK. A shed erected, by the lessee, upon a pier leased from the city of New York, under a lease requiring its erection and providing that it is "to become the property" of the city "on the expiration of the lease," becomes the property of the city on being erected and affixed to the realty, and, hence, is not assessable for taxation as property of the lessee. *People ex rel. I. N. Co.* v. *Barker*, 15 App. Div. 628, affirmed.

(Argued May 3, 1897; decided May 11, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 20, 1897, which affirmed an order of the Special Term setting aside assessments for taxation on real estate for the year 1896.

The facts, so far as material, are stated in the opinion.

*Francis M. Scott* and *George S. Coleman* for appellants. The structures assessed for taxation were liable to assessment in 1896 unless they then belonged to the mayor, aldermen and commonalty of the city of New York. (1 R. S. ch. 13, tit. 1, §§ 1, 2; *People ex rel.* v. *Cassity*, 46 N. Y. 46; *Smith* v. *Mayor, etc.*, 68 N. Y. 552; *People ex rel.* v. *Comrs. of Taxes*, 82 N. Y. 459; *People ex rel.* v. *Board of Assessors*, 93 N. Y. 308.) At the time of assessment the structures did not belong to the mayor, aldermen and commonalty of the city of New York, but belonged to the relator. The assessment against the structures on the two piers and bulkhead

between is not illegal because made in a lump sum. (L. 1880, ch. 269, § 8; L. 1882, ch. 410, §§ 847, 869, 927, 942; *In re Anderson*, 57 Barb. 411.)

*Henry Galbraith Ward* for respondent. The sheds are fixtures upon the city's real estate, and are, therefore, its property and not assessable for taxation. (*Kissam* v. *Barclay*, 17 Abb. Pr. 360; *People ex rel.* v. *Comrs. of Taxes*, 80 N. Y. 573; *People ex rel.* v. *Bd. of Assessors*, 93 N. Y. 308; *Leach* v. *Goode*, 19 Mo. 501; *Mayo* v. *Carrington*, 19 Grat. 74; *People ex rel.* v. *Cassity*, 46 N. Y. 46; *People ex rel.* v. *Comrs. of Taxes*, 82 N. Y. 459; *People ex rel.* v. *Comrs. of Taxes*, 101 N. Y. 322; *Smith* v. *Mayor, etc.*, 68 N. Y. 552.) As the sheds in question were erected for trade purposes, they might as trade fixtures have remained the property of the relator removable by it at the end of the lease, for which reason the lease expressly deprived the relator of the right to remove them, and so took them out of the exception in favor of the trade fixtures. (*Ombony* v. *Jones*, 19 N. Y. 234; *Austin* v. *H. R. R. R. Co.*, 25 N. Y. 334; *Van Ness* v. *Pacard*, 2 Pet. 137; *Brown* v. *R. E. L. & P. Co.*, 55 Fed. Rep. 229.) The assessment of lots, having different ward numbers and occupied under separate leases, together, for the purposes of taxation is illegal. (L. 1882, ch. 410, §§ 814, 817, 847, 927; *People ex rel.* v. *Cady*, 105 N. Y. 299.)

GRAY, J. The relator is a corporation of the state of New Jersey, operating certain steamship lines between the port of New York and European ports. It is the tenant and occupant, under three leases made in 1894 by the city of New York, of two piers in the waters of the North river and of bulkheads between the same, or adjoining thereto. The leases, under which the relator acquired the right to occupy and to use this property, contain among their provisions one which obligated the lessee " to erect, construct and maintain upon the said pier as widened, during the term of these presents, a shed." The provision requires the shed to be erected in accordance with the laws and regulations in such

cases and in conformity with plans and specifications approved
by the dock department, and continues thus : " Said shed to
become the property of the parties of the first part on the
expiration or sooner determination of this lease or any renewal
thereof, free of all claims, charges and incumbrances of every
kind whatsoever, etc." The relator shedded the leased
property, as required by its lease, and, in 1896, the buildings
were assessed as its property for taxation. According to the
return made by the commissioners of taxes and assessments of
the city of New York to the writ of certiorari, which issued
upon the petition of the relator, the structures assessed against
the relator were " substantial sheds and buildings " and were
" firmly affixed to the land."

The question is whether these structures, or sheds, as they
are described in these leases, could be legally assessed for
taxation purposes as the property of the relator. The learned
corporation counsel admits, if the sheds belonged to the city
of New York, that they were exempt from taxation ; while
the counsel for the relator admits, if they were the property
of the relator, that they had been properly assessed. Under
the statute in force, all lands within this state, owned by
individuals or by corporations, shall be liable to taxation ; and
the term " land " is to be construed to include the land itself
and all buildings and structures erected upon or affixed to the
same. (1 R. S. ch. 13, tit. 1. secs. 1 and 2.) These sheds
must be deemed, therefore, to partake of the nature of realty
and the question of their ownership must turn upon the terms
of the leases. The appellants rest their argument, with
respect to the question of ownership, upon the provision of
the lease above mentioned, that the shed shall become the
property of the city after the expiration of the lease ; which
provision, as they maintain, shows that it was in contempla-
tion of both parties that the erections should be the property
of the steamship company during the term of the lease.

We think that this is an incorrect view of the situation.
It is a familiar rule, that, when structures are erected by per-
sons not owners of the land, they become part of the realty,

and, as such, the property of the landowner. It requires an agreement to be expressed in order to prevent the operation of this rule. If the right of removal is reserved to the lessee · in a lease, then, in such a case, he will be regarded as an owner of real estate for the purpose of taxation. (*People ex rel. Van Nest* v. *Commissioners of Taxes*, 80 N. Y. 573.) When the lease in question provides that the sheds are to become the property of the city at its expiration, the language does not warrant the inference of an intermediate ownership; unless we attach an undue significance to the word " become." Such a meaning we do not think should be attached to that word; whether we regard the purpose that it apparently subserves; or whether we regard the confusion of ideas which would follow, if it had the meaning claimed for it. Its use was, evidently, to prevent any misunderstanding as to a right of removal, whether under a general claim of property in the erections, or under a claim to them as trade fixtures. It was to make the city's ownership definite. The provision followed naturally, and not without some degree of pertinence, upon the obligation imposed upon the lessee to erect a shed. Its presence had the effect of negativing any inference from the requirement that the lessor had waived its ownership. The obligation resting upon the lessee to erect a shed was one of the conditions of the letting by the city and formed a part of its consideration. As the learned counsel for the respondent justly observed, it is not legally conceivable that the relator could be an owner until the termination of the lease and that then a new ownership should spring up in the city; for " ownership necessarily implies perpetuity, or at least the possibility of perpetuity."

The general rule, where the lease is silent upon the subject, imposes upon the lessor the obligation to pay the taxes upon the leased property and, in this case, it would be a seeming incongruity, if the city, which is the taxing power, could assess its tenant for taxation. The obligation to erect the structures, as one of the conditions of the letting, and the denial of the right of removal are considerations, which irresistibly militate

against the assertion of a right to assess them as property of the relator for taxation.

The order appealed from should be affirmed, with costs.

Bartlett, J. (dissenting).   It seems to me that the prevailing opinion ignores the contract entered into by the city of New York and the relator corporation.

The property embraced in this proceeding is included in three separate leases running ten years, from January, 1894, with the privilege of one renewal.

The city of New York, as party of the first part, agreed with the International Navigation Company, the party of the second part, that the latter should keep and maintain the wharf property and the structures thereon in good repair, and, in addition, the party of the first part licensed, authorized and extended to the party of the second part the right to, and the party of the second part bound itself to erect and maintain upon the pier during the term a shed, which was " to become the property of the party of the first part on the expiration or sooner determination of the leases, or any renewal thereof," etc.

The party of the second part is also bound, if the wharf property shall be destroyed by fire, etc., to rebuild the same.

It seems to me clear that it was the intention of the parties that the shed should remain the property of the relator until the leases expired or otherwise terminated.   The language is perfectly clear, the shed is " to become the property " of the city at the expiration of the leases.

It is the well-settled law of this state that it is competent for parties by contract to so regulate their respective interests that one may be the owner of the building and another of the land.   (*People ex rel. Muller* v. *Board of Assessors*, 93 N. Y. 308, 311; *People ex rel. Van Nest* v. *Comrs. of Taxes*, 80 N. Y. 573; *Smith* v. *Benson*, 1 Hill, 176; *People* v. *Cassity*, 46 N. Y. 46; *Smith* v. *Mayor, etc.*, 68 N. Y. 552.)

The learned counsel for the respondent is quite frank in the position he takes.   He says: " Ownership necessarily implies

perpetuity, or at least the possibility of perpetuity.   *   *   *
No form of words can make ownership anything different
from what it is in point of law.   Even if the lease had
expressly provided that the tenant should be the owner dur-
ing the term, and the city should become the owner at the end
of it, still the interest of the tenant in the shed would be
only that of a *termor* and the city would have been the legal
owner of it all the time."

I think this statement involves an obvious fallacy and is
contrary to the settled law of this state.

If it is competent, as the authorities hold, that parties by
contract can so regulate their respective interests that one may
be the owner of the building and another of the land, it is
difficult to see what legal obstacle in the case at bar prevented
the contracting parties entering into covenant that the com-
pany shall erect and maintain and replace, if destroyed by
fire, etc., certain structures on the wharf to remain its prop-
erty during the twenty years that these leases may possibly con-
tinue, and, at the end of that period, in the express language
of the contract, they are, "to become the property" of the
city ; that is to say, by the terms of the contract the title is
then transferred.   This is nothing more than a contract for
the future transfer of title.

It is admitted by counsel for respondent that this provision
of the contract was probably inserted to prevent the removal
of the shed at the end of the term as a trade fixture.

In this case we are simply considering the title, which is
the subject of taxation, as the statute makes the shed "land."

The Revised Statutes (Part 1, chap. 13, tit. 1, sec. 1) pro-
vide that, "All lands   *   *   *   within this state, whether
owned by individuals or corporations, shall be liable to taxa-
tion.   *   *   *

"§ 2. The term 'land,' as used in this chapter, shall be con-
strued to include the land itself, above and under water ; all
buildings and other articles and structures, substructures and
superstructures erected upon, under or above, or affixed to the
same ;   *   *   *"

Under this statutory definition of land it seems to me clear that the structure to be erected by the company is taxable as the land or property of the company, and without regard to the fact that the fee of the soil is vested in the city.

The further point urged against this assessment, that it is illegal, because the structures on the two piers and bulkhead are made in a lump sum, is not, in my opinion, well taken.

I think the order appealed from should be reversed, with costs.

Andrews, Ch. J., O'Brien, Haight and Martin, JJ., concur with Gray, J., for affirmance; Bartlett, J., reads for reversal; Vann, J., not voting.

Order affirmed.