426   People ex rel. Pennsylvania R. R. Co. v. Leo.

First Department, April, 1921.   [Vol. 196

The People of the State of New York ex rel. Pennsylvania Railroad Company, Respondent, v. John P. Leo and Others, Constituting the Board of Appeals of the City of New York, Appellants.

First Department, April 29, 1921.

Landlord and tenant — lease of pier by New York city to common carrier — lessee not obliged under terms of lease to install automatic fire extinguishing system under order from fire commissioner — Code of Ordinances of City of New York, § 20 of article 2, chapter 12, as amended in 1918, imposes duty upon city authorities to comply with said order.

The relator, a common carrier, the lessee of a pier in New York city, was not obligated by the terms of the lease, as between it and the city, as its landlord, to comply with an order issued by the deputy fire commissioner of the city a short time prior to the expiration of the lease commanding the installation of an automatic fire-extinguishing system on said pier, where it appeared that the lease, which was executed in 1891 for a term of ten years with privilege of two renewals, provided that the lessee would keep the property in repair and rebuild in case of fire and would obey " all laws, orders  *  *  * respecting the rates chargeable for wharfage and respecting the use of the said wharf property, and the waters adjacent thereto;" that the lease and its renewals contained a license to erect a shed on the pier which should become the property of the city; and that prior to the amendment in 1918 of section 20 of article 2 of chapter 12 of the Code of Ordinances, the fire commissioner possessed no authority to make any such order with respect to pier property.

Furthermore, neither when the lease was made nor when the pier was shedded was it contemplated by the parties that such an order might be made within two years of the expiration of the lease involving the expenditure of a large sum of money for the installation of a fire-extinguishing system which upon installation became the property of the city.

Section 20 of article 2 of chapter 12 of the Code of Ordinances, providing for fire-alarm and fire-extinguishing appliances, as amended in 1918, imposes the obligation of complying with an order issued by the fire commissioner respecting two classes of buildings or structures; *first,* upon the " owners and proprietors " of certain classes of privately owned buildings, and *second,* upon the " authorities and persons having charge " of certain public or *quasi* public structures, to the latter of which the amendment added " pier sheds, bulkhead sheds, and other water front structures." Hence, an order issued to the lessees and occupants of a pier shed to establish a sprinkler system, did not impose any obligation

upon them to comply therewith, but the city, which was the authority in charge of the pier shed, was required to comply with any such order, and notice should have been served upon it.

APPEAL by the defendants, John P. Leo and others, constituting the board of appeals of the city of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of July, 1920, sustaining a writ of certiorari and annulling their proceedings and determination denying the appeal of the relator from the order of the fire commissioner requiring it to install on pier 77, North river, certain automatic sprinklers.

*John F. O'Brien* of counsel [*Francis E. V. Dunn* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the appellants.

*E. J. Freedman* of counsel [*P. W. Boardman* with him on the brief; *O'Brien, Boardman, Parker & Fox,* attorneys], for the respondent.

LAUGHLIN, J.:

The relator is in possession of pier 77, North river, under a lease from the city of New York, executed on the 1st of July, 1891, for a term of ten years with a privilege of two renewals for terms of ten years each, which it exercised, and its term under the second renewal of the lease will expire on the 1st day of July, 1921. The rent reserved for the first term was $10,000 per annum, for the second $11,000 and for the third $12,000. By each renewal the terms of the original lease were continued, modified only with respect to the annual rental. The relator was to use and has used the pier for handling and storing freight in connection with its business as a common carrier. It covenanted and agreed to keep the wharf property and structures thereon in good condition and sufficient repair throughout the period of its occupation thereof at its own expense and that in the event of " total or partial destruction through fire, floating ice, collision or the action of the elements the said wharf property shall require to be rebuilt, the same shall be so rebuilt by and at the expense of the party of the second part [the tenant],

428 People ex rel. Pennsylvania R. R. Co. v. Leo.

First Department, April, 1921. [Vol. 196

but in such manner as shall be approved by the said Board of Docks, and under their direction." It further covenanted and agreed, among other things, " to abide by and conform to all laws, orders, rules, by-laws, regulations and resolutions already adopted, or which may hereafter be adopted by the Legislature of the State of New York, or by the parties of the first part, through or by said Board of Docks, or otherwise, respecting the rates chargeable for wharfage, and respecting the use of the said wharf property, and the waters adjacent thereto." Formal renewal leases were made embodying the terms of the original leases modified with respect to the annual rental, but each of them contained additional clauses renewing a license and authority to the tenant contained in the original lease to erect and maintain upon the wharf property and pier a shed and providing for a termination of the lease in certain events. It was provided that the shed should be erected under the direction and supervision of the engineer in chief of the department of docks and in accordance with plans and specifications to be submitted and approved by the commissioner of docks and that the shed should " revert to and become the property of the city of New York, free from all encumbrances whatsoever upon the expiration or sooner termination of this lease." With respect to the termination of the lease before the expiration of the term, it was provided that the rights and obligations of the lessee should terminate as to the whole or part of the wharf property, in the event that the commissioner of docks should " determine to proceed with the work of building, or rebuilding wharves, piers, bulkheads, basins, docks or slips within a section or district of the water front which shall include the wharf property hereinbefore described, according to any plan or plans now adopted and approved, or which may hereafter be adopted and approved, and pursuant to any existing or future law," and should determine for the purpose of such building or rebuilding that it would be necessary to terminate the interests of the lessee " in the wharfage to arise, accrue or become due from the said wharf property, or from any part thereof," or if at any time during the term the commissioner of docks should determine that the wharf property or any part thereof " shall be used for some other purpose

than for the purpose of the collection of wharfage, and that
it will be necessary to terminate the interest of the party of
the second part in such wharfage," upon the receipt by the
lessee of a notice in writing from the commissioner of docks
to that effect " describing the wharf property, or the part
thereof affected thereby." It was further provided that in
the event of such notice of termination, the rent reserved
should cease and that the lessee should have no claim for
damages or compensation for the termination of its interests
or for other specified damages or injury, with which we are
not concerned on this appeal, or on account of any structures
or improvements that it may have erected or made or may
have been erected or made by others. A shed was erected
on the pier by the lessee under a license and authority con-
tained in the original lease between the 3d of January, 1893,
and the fifteenth of May of that year. The agreed statement
of facts shows that the shed is at the foot of Thirty-seventh
street and that it " consists of a one-story, steel frame, corru-
gated iron pier shed, 505 feet by 62 feet with plank floor and
wooden roof, slag and tin covered," and that the shore end
is two stories in height for a distance of approximately 70
feet and the second story is used for offices and a record room
and is divided into several rooms by wooden partitions covered
with sheet metal and that the ceilings are covered with sheet
metal; that the shed is about 28 feet high but that the highest
part is approximately 35 feet high; that there were twenty-
three corrugated iron roll shutters on the north and south
sides of the pier and two on the river end and two on the
land end; that there is a plain glass window over each shutter
on the north and south sides about 3x4½ feet and that the
Texas skylight has a plain glass window the entire length of
the pier; that 200 feet to the south is an open pier and 196
feet north of the northerly side of the pier there is a corrugated
iron covered pier 486 feet long and between it and pier 77 there
is a frame corrugated iron covered float bridge, extending
approximately 150 feet from the bulkhead from which tracks
run directly alongside the bulkhead shed and into the freight
yard, which is 250 feet from the land end of the pier and
about 150 feet from the bulkhead shed and to the east of
Twelfth avenue and north of Thirty-seventh street, and that

there is another freight yard east of Twelfth avenue and south of Thirty-seventh street, connected with the bulkhead shed by tracks in Twelfth avenue. The stipulated facts further show in detail the manner in which the relator has equipped the pier for the purpose of extinguishing fire and the organization of an efficient fire brigade on the pier, which responded in about one minute to an alarm sounded on the middle of the pier.

On the 23d day of April, 1919, the deputy fire commissioner, on the recommendation of the chief of the bureau of fire prevention, made and caused to be served upon the relator an order known as " Order No. 89558F," which, so far as here material, is as follows:

" New York, *April* 23, 1919.

" To Lessees and Occupants of Premises Pier 77, North River, Borough of Manhattan, New York City:

" You are Hereby Ordered and Required, within 60 days from date of the service of this order, to:

" 1. Provide a separate and distinct dry system of automatic sprinklers throughout pier having at least one source of water supply, or other approved fire extinguisher system, arranged and equipped as provided in rules for fire extinguishing appliances adopted by the Board of Standards and Appeals May 24, 1917, as amended May 2, 1918, and January 21, 1919, effective February 17, 1919. Sec. 20. Ch. 12, Code of Ordinances.

" Note.— No structural alterations to the premises are necessary to comply with the requirements of this order.

" One set of preliminary paper plans accompanied by application and specification sheets in duplicate, showing all proposed alterations must be filed with and approved by this Department before the above work may be commenced.    *   *   *

" Note.— In addition to this order, an order requiring the installation of an interior alarm system will be issued as soon as a layout can be prepared by the Electrical Division of this Bureau.                    CHARLES H. CULKIN,

" JJC-6-D&V                    *Deputy Fire Commissioner.*

" Neglect or refusal to comply with the above order may render you liable to fine or imprisonment or both."

The relator appealed therefrom to the board of appeals, which, by virtue of the provisions of chapter 503 of the Laws of 1916, adding section 718-d to the Greater New York charter (Laws of 1901, chap. 466), as amended by chapter 601 of the Laws of 1917, was authorized on such an appeal to review the order and reverse it or affirm it in whole or in part or to modify it. (Greater N. Y. Charter, § 719, subds. 1, 5, as added by Laws of 1916, chap. 503.) The appeal from this order and from two other orders of the fire commissioner relating to the pier were heard on the 7th day of October, 1919, and the board made an order affirming the order in question and denying the appeal with respect thereto. On the twenty-third of the same month the relator, pursuant to section 719-a of the Greater New York charter (as added by Laws of 1916, chap. 503), presented a petition to the Supreme Court for a writ of certiorari with respect to this order and in so far as the board denied its appeal concerning the other orders, but the appeal now before us only relates to order No. 89558F. The petition sets forth the proceedings had and many of the facts already stated and charges that the decision with respect to this order is erroneous and illegal on the grounds that the fire commissioner had no authority to issue or enforce it; that the duty, if any, to comply with it rests upon the owner of the pier and not upon the relator, who is the lessee; that the order is unreasonable, unnecessary and oppressive and is unconstitutional in that it deprives the relator of its property without due process of law and of the equal protection of the laws. The writ was issued the next day and the return thereto was made on the twenty-third of December thereafter. The return denies the allegations with respect to the decision being erroneous and illegal and the order not being binding on the lessee and admits the other allegations of the petition, and sets forth, among other things, the facts already stated and describes in detail the freight that was found on the pier and annexes the testimony taken on the appeal, which is quite voluminous. In answer to the contention that the order was unauthorized, the return quotes subdivision 3 of section 775 of the Greater New York charter (added by Laws of 1911, chap. 899, as amd. by Laws of 1916, chap. 503) as

432    People ex rel. Pennsylvania R. R. Co. *v.* Leo.

First Department, April, 1921.    [Vol. 196

authorizing it. By those statutory provisions the fire commissioner is empowered to " Order, in writing, the installation, as prescribed by any law or ordinance or by the rules and regulations of the board of standards and appeals, in any building, structure, enclosure, vessel, place or premises, of automatic or other fire alarm system or fire extinguishing equipment and the maintenance and repair thereof; or the construction, as prescribed by any law or ordinance or rule or regulation of the board of standards and appeals, of adequate and safe means of exit from all buildings, structures, enclosures, vessels, places and premises, except tenement houses." The return also set forth the provisions of section 20 of article 2 of chapter 12 of the Code of Ordinances of the City of New York, relating to· fires and fire prevention and known as the Fire Prevention Ordinance, as authority for the order. That section · as amended in November, 1918, provides as follows:

" Sec. 20. Fire-alarm and fire-extinguishing appliances.— The owners and proprietors of all manufactories, hotels, tenement-houses, apartment houses, office buildings, boarding and lodging-houses, warehouses, stores and offices, theatres and music halls, and the authorities or persons having charge of all hospitals and asylums, and of the public schools and other public buildings, churches and other places where large numbers of persons are congregated for purposes of worship, instruction or amusement, *and all piers, bulkheads, wharves, pier sheds, bulkhead sheds or other water-front structures*, shall provide such means of communicating alarms of fire, accident . or danger to the police and fire departments, respectively, as the fire commissioner or the police commissioner may prescribe, and shall also provide such fire hose, fire extinguishers, buckets, axes, fire hooks, fire doors and other means of preventing and extinguishing fires as the fire commissioner may direct." (See Cosby's Code Ord. [Anno. 1921] pp. 335, 592.)

The provisions inserted by the amendment are italicised.

The only provisions of the lease relating to the point as to whether, as between the city and the relator, it was the duty of the relator to comply with such an order have been stated. On the hearing before the board of appeals it was stipulated by the corporation counsel that the lease contained no express provisions obligating the lessee to comply with such

an order.  The fire commissioner had no jurisdiction to make such an order with respect to pier property until the enactment of said amendment to section 20 of the Fire Prevention Ordinance in 1918, some twenty-seven years after the original lease was made and long after the pier was shedded and no other official board or body had such authority.  I think it is quite clear that neither when the lease was made nor when the pier was shedded was it contemplated by the parties that such an order might be made within about two years of the expiration of the lease concededly involving an expenditure by the lessee of upwards of $19,000 for the installation of fire-extinguishing apparatus, which upon installation plainly became the property of the city.  (*People ex rel. International Nav. Co.* v. *Barker,* 153 N. Y. 98.)  But whether contemplated or not, the tenant was not by the terms of the lease obligated as between it and the city, as its landlord, to comply with this order; and if under the exercise of the police power and by virtue of the Fire Prevention Ordinance and the order of the fire commissioner, it should be obliged to comply therewith, I think it would have a cause of action against the city to recover therefor if the city on due request should fail at its own expense to perform the obligations thus imposed upon the relator by the order.

The fire commissioner, however, in making such an order, in so far as compliance therewith is required of the party to whom it was issued, was limited by the ordinance.  Subdivision 6 of section 775 of the Greater New York charter (added by Laws of 1911, chap. 899, as amd. by Laws of 1914, chap. 459) provides that the orders of the fire commissioner " shall be addressed to the owner or owners, lessees or occupants of the building, structure, enclosure, vessel, place or premises affected thereby," but that it shall not be necessary to designate them by name and that service thereof may be made by delivery of a copy to an owner or a lessee or to any person of suitable age and discretion in charge or apparently in charge of the premises, and if no person be found in charge of the premises, by affixing a copy upon the premises.  Section 776-a of the Greater New York charter (as added by Laws of 1911, chap. 899) provides that the expenses attending the execu-

434 People ex rel. Pennsylvania R. R. Co. *v.* Leo.

First Department, April, 1921. [Vol. 196

tion of such an order lawfully made shall be a several and joint personal charge against each of the owners or part owners and each of the lessees and occupants of the building or structure in respect to which the expenses were incurred and against every person or body who was by law or contract bound to perform the duty imposed by the order and that the expenses shall be a lien upon the rent due or to grow due for the use of the building or structure or any part thereof. Section 778-a of the Greater New York charter (added by Laws of 1911, chap. 899, as amd. by Laws of 1916, chap. 503) requires a lessee or person in possession or charge of a building or structure upon whom such a notice is served, to give immediate notice to the owner or agent, if known to him, as therein provided, and in default thereof he becomes personally liable to the owner for all damages sustained by such failure. Those provisions prescribe and regulate the duty and liability owing to the public but not as between a landlord and tenant. But I am of opinion that the point now presented for decision is to be decided not by those provisions but by the construction of said section 20 of the Fire Prevention Ordinance. It will be observed that the section imposes the duty of complying with such an order upon two classes of persons, and with respect to two classes of buildings or structures. The first part of the ordinance imposes the duty upon the " owners and proprietors " of certain classes of private buildings and then, before the amendment of the ordinance, the duty was imposed upon the " authorities or persons having charge of " certain other classes of buildings and structures, some of which were owned by the State or municipality, such as asylums, public schools and certain hospitals, and the others of which, although used for quasi-public purposes, were privately owned. Thus it will be seen that as the ordinance stood before the amendment, no duty was imposed upon tenants, lessees or occupants with respect to this second class. The amendment incorporated with the second class, piers, bulkheads, wharves, pier sheds, bulkhead sheds, and other water-front structures, some of which were and are privately owned and some of which were and are owned and used by the city and some of which were and are owned by it and leased to others. I am of opinion, therefore, that the reasonable construction of the

ordinance, as thus amended, imposes the duty of complying with this order upon the city authorities in charge of the pier property of the city precisely as it is imposed upon the authorities in charge of public schools and hospitals owned by the city. It may be argued that with respect to some of the second class before the amendment, the duty was imposed upon those having charge of buildings, some of whom might be managers or lessees, designated as " other places where large numbers of persons are congregated for purposes " of amusement; but there is room for argument that the rule of *ejusdem generis* should be applied in the construction of the ordinance and that the general words thereof should be limited to buildings of one of the specified classes. It is unnecessary, however, to decide that point, for if it was intended by the amendment to impose this duty on the lessee of a shedded pier, the language employed and the context are too vague and indefinite to be given such a construction, which would subject the lessee to prosecution for a misdemeanor in failing to comply with the order. (See Greater N. Y. Charter [Laws of 1897, chap. 378], § 773, as continued in force by Laws of 1901, chap. 466, " Section Three; " *People* v. *Kaye*, 212 N. Y. 407; *Gibbs* v. *Arras Brothers*, 222 id. 332; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81. See, also, Code of Ordinances of 1915, chap. 12, art. 2, § 30; Code of Ordinances of 1916, chap. 12, art. 2, § 30; Cosby's Code Ord. [Anno. 1915] p. 224; Cosby's Code Ord. [Anno. 1921] p. 338; Greater N. Y. Charter, § 719-b, as added by Laws of 1916, chap. 503.)

Mr. Justice ERLANGER at Special Term, in granting the order, wrote a very excellent opinion (112 Misc. Rep. 578), and were it not for the fact that a number of similar appeals are being held in abeyance by the board of appeals awaiting the decision on this appeal, we would not have deemed it necessary to write.

It follows that the order should be affirmed, with ten dollars costs and disbursements.

SMITH, PAGE and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.