## GEORGE H. BOWMAN CO. v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia.
Submitted March 6, 1929. Decided
April 1, 1929.

No. 4720.

Chester A. Gwinn, of Washington, D. C., for appellant.

L. W. Scott, of Washington, D. C., Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Helen R. Carloss, and Sewall Key, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. During the year 1920, the appellant corporation, a wholesale and retail dealer in chinaware, glassware, and kindred articles, doing business in the city of Cleveland, Ohio, rented for storage purposes a building known as the Eagle Street Warehouse.

By stipulation filed in the hearing before the Board of Tax Appeals, February 28, 1927, it was agreed, among other things, that the building belonged to Augusta B. Bowman, owner of 490 shares out of a total of 5067 shares of stock in said corporation; and that she is the wife of George H. Bowman, owner of more than 50 per cent. of the capital stock of the corporation. The stipulation, among other things, contained the following statement of facts: "The petitioner has not, and did not have during said year, a lease on the Eagle Street Warehouse, but occupied the same as a month to month tenant paying therefor a monthly rental of $1,750.00. There is not now, and there has never been, any definite arrangement as to the duration of petitioner's tenancy of said warehouse nor for the reimbursement of the petitioner for any amounts expended by it

for repairs, improvements or betterment of said Eagle Street Warehouse."

To better adapt the warehouse to the use of appellant company, it installed certain improvements consisting of an elevator, fire doors, partitions, and plumbing, at a cost of $7,084.69. The corporation in making return of its income and profits tax for the year ending January 31, 1921, deducted from its tax the total cost of the improvements as business expense. The commissioner disallowed the deduction on the theory that the improvements represented a capital expenditure which could be recovered only by annual deduction for depreciation extending over the useful life of the property. The Board sustained the decision of the commissioner, and from the decision this appeal was taken.

The provisions of the Revenue Act of 1918, 40 Stat. 1057; and the Revenue Act of 1921, 42 Stat. 227, are identical in so far as they relate to the question here involved. Reference hereafter made to the act will apply to the 1918 statute.

By section 234(a)(1) of the act, a corporation in computing its net income may make, among others, the following deductions: "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

Section 215 of the act provides: "That in computing net income no deduction shall in any case be allowed in respect of— * * * (b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." This provision of the statute includes amounts paid out "in any case" by either an owner or a tenant "of any property or estate," not merely to keep the property going, but for permanent improvements; and which may not be considered as mere upkeep, but as investment, increasing the value of the property or estate. Duffy v. Central Railway Co. of N. J., 268 U. S. 55, 45 S. Ct. 429, 69 L. Ed. 846.

Section 234 (a) provides that the taxpayer, in making his return, may deduct (7) "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

It is the law that a tenant who makes permanent improvements on leased property, with the expectation of using the improvements in his trade or business during the term of the lease, may not deduct the cost as expense in a single year, but can recover only their cost by annual charges for depreciation. Duffy v. Central Railroad Co. of N. J., supra; National City Bank of Seattle v. United States, 64 Ct. Cl. 236, certiorari denied, 276 U. S. 620, 48 S. Ct. 301, 72 L. Ed. 735.

It is sought, however, to distinguish the instant case from the decisions cited on the ground that in those cases the lease was for a fixed number of years, while in the present case the tenancy was merely from month to month. We are of opinion that the period of the lease is not controlling where it is shown that the tenancy extended for a period substantially beyond the taxable year in which the adjustment for the improvements is claimed. In the present case the tenancy was still continuing at the time the stipulation was made in 1927, and, for ought that appears in the record, it is still in existence. It may well be that, if the tenancy had terminated prior to or at the end of the taxable year, a different case would be presented; but the taxing authorities are not confined to any fixed or rigid rule in applying the statute, since each case must depend largely upon its own facts. To meet contingencies that may arise in the administration of the complex revenue laws, the department, by lawful authority, has established rules and regulations of which article 109, among other things, provides: "The cost borne by a lessee in erecting buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In order to return to such taxpayer his investment of capital, an annual deduction may be made from gross income of an amount equal to the total cost of such improvements divided by the number of years remaining of the term of lease, and such deduction shall be in lieu of a deduction for depreciation. If the remainder of the term of lease is greater than the probable life of the buildings erected, or of the improvement made, this deduction shall take the form of an allowance for depreciation."

The method of computing depreciation allowance is provided in article 165 as follows: "The capital sum to be replaced should be charged off over the usual life of the property either in equal annual installments or in accordance with any other recognized trade practice, such as an apportion-

ment of the capital sum over units of production. Whatever plan or method of apportionment is adopted must be reasonable and should be described in the return."

It will be observed that this furnishes an equitable basis for the protection of all parties concerned. In the case of tenancy, the life of the improvement can be estimated in years and a proportionate depreciation allowed for each year, and, if the tenancy expires before the expiration of the life period of the improvement, the difference between the depreciation already allowed and the cost of the improvement represents the credit to which the taxpayer is entitled for the year in which the lease terminates. This was the method employed by the commissioner and approved by the Board in the present case. The Board in its opinion defined the rule applicable to leases, and especially to an indeterminate lease like the one before us, as follows: "If the petitioner's tenure extends over the period of the useful life of the improvements, it will have recovered its cost through the annual allowance for exhaustion; if the tenure should for any reason terminate prior to the useful life of the improvements, petitioner will then be entitled to a deduction from gross income of the unextinguished cost of such improvements. In either event petitioner will have obtained the deduction to which, under the statute, he is entitled."

This procedure is in accord with the rule announced in the Duffy Case, as follows: "In respect of the 999 year leases, the additions and betterments will all be consumed in their use by the lessee within a fraction of the term, and, as to them, allowances for annual depreciation will suffice to meet the requirements of the statute. In the case of the pier leases, the improvements may and probably will outlast the term, and, as to them, deductions may more properly take the form of proportionate annual allowances for exhaustion."

The law makes no distinction between an owner and a tenant. If the owner is operating the property and makes repairs, the cost may be deducted from his income and profits taxes for the current year. If, however, the improvements are permanent, he may only deduct for the proportionate amount as depreciation. The same rule applies, and should apply to a tenant operating a property for profit. If the improvement he makes amounts merely to repairs, the same rule of deduction would apply as in the case of the owner. If, on the other hand, the improvement which he makes for his own use and convenience is permanent, he should be required to comply with the rule of depreciation as adopted in this case.

The decision of the Board of Tax Appeals is affirmed with costs.