BECK et al. v. F. W. WOOLWORTH CO.
Civ. No. 660.

United States District Court
N. D. Iowa, W. D.
April 27, 1953.

826

Deloss P. Shull, Sioux City, Iowa (of Shull & Marshall, Sioux City, Iowa), for plaintiffs.

Alton B. Howland and James M. Prichard, Des Moines, Iowa (of Gamble, Read, Howland, Gamble & Riepe, Des Moines, Iowa), for defendant.

GRAVEN, District Judge.

In this action both the plaintiffs and the defendant ask for a declaration as to liability for the payment of taxes upon a new building erected by the defendant upon premises leased by it from the plaintiffs. The plaintiffs, W. E. Beck and Eva Logan, are citizens of the States of Iowa and Illinois respectively. The defendant is a corporation organized under the law of the State of New York. Jurisdiction in this case is based upon diversity of citizenship. The plaintiffs, who are brother and sister, are the present owners of a lot in the business area of Sioux City, Woodbury County, Iowa. The lot has been owned by members of the Beck family for a long period of time. The lot is 22 feet in width. In 1938 there was situated upon the lot a three story building which had been built around 60 years before. Adjoining the plaintiffs' lot there was, and is, a lot 66 feet wide owned by other parties which was also occupied by a building. The defendant has operated a retail store in Sioux City, Iowa, for many years. Prior to 1938 the defendant was the lessee of the plaintiffs' lot and the 66 foot lot adjoining. While the exact terms and conditions of the leasing do not appear, it does appear that the defendant's lease of the plaintiffs' lot was to expire May 1st, 1938. On December 1st, 1937, a new lease was entered into between the defendant, as lessee, and the plaintiffs and a sister, since deceased, as lessors. The lease is for the period commencing May 1st, 1938, and ending April 30th, 1968, or for a term of thirty years. Under the terms of the lease the rent payable by the defendant is $7,500.00 per year for the first ten years of the term, $8,400.00 per year for the next ten years, and $9,000.00 per year for the last ten years. The lease contains no provision for the renewal or extension of it. The execution of the lease was preceded by months of negotiations between the parties. The lease is typewritten and is not a so-called "form lease." During their negotiations, the parties were represented by legal counsel. After the parties had been negotiating for some time, the defendant prepared a draft of a proposed lease. The proposed lease was then examined by counsel for the lessors who, in a letter to the defendant, requested that a number of changes be made in it. Some of the requested changes related to additions and some related to the specific wording of certain provisions. A final draft of the lease was then made incorporating the requests of lessors' counsel in practically the exact words of such counsel. At the time the lease was negotiated the building situated on plaintiffs' lot was quite old. The matter of the need for remodeling it and making alterations in it, or building a new building to take its place, was given consideration by the parties during the course of their negotiations. The provision in the lease as finally drafted and executed relating to those matters is entitled "Alterations and Reconstruction." A portion of that provision is in the exact words of counsel for the lessors as set forth in his letter to the defendant. The portion of that provision material to this litigation is as follows:

"The Tenant shall have the right to make such alterations, improvements and changes in such parts of the building as are occupied by it, and as it finds necessary for its purpose, at its own expense, including the right to raze the building upon said premises and reconstruct in its place and stead a new building of at least equivalent value, not less than two stories in height, and not less in area than the existing building upon said premises, * * *. All alterations so made shall be construed as an improvement to, and become a part of said real estate belonging to the Landlord upon termination or cancellation of said lease, and the Tenant shall neither have the right nor obligation to remove the same nor to change such structure or restore said premises

to the condition in which they originally were, excepting only as is hereinafter expressly provided for."

In 1948 and 1949 the defendant razed the old building on plaintiffs' lot and erected a new building. The new building covers both the plaintiffs' lot and the 66 foot lot adjoining. The new building is a substantial and valuable building of modern, permanent, fireproof construction. The assessed value of the plaintiffs' lot with the old building on it was $51,202.00 of which the assessed value of $48,202.00 was allocable to the land itself and $3,000.00 to the building. In 1950 the taxing authorities of Woodbury County, Iowa, assessed the entire new building on both lots as a unit, separate and distinct from the underlying tracts of land, at the figure of $144,450.00. The underlying 22 foot lot owned by the plaintiffs is still assessed at $48,202.00, the same as before.

The plaintiffs paid the taxes on their lot with the old building thereon for the years up through those for the year of 1949. Since that time they have paid the taxes based on the assessed value of the land but have refused to pay the taxes based upon the assessed value of the new building. The defendant has paid the taxes for the years of 1950 and 1951 on the new building and has withheld the amount of them from the rent under an agreement that such payments should be without prejudice. The parties have stipulated that, of the taxes assessed against the new building, 19.78 per cent are properly allocable to that portion of it which is upon the plaintiffs' lot. The 1950 taxes payable in 1951 upon the underlying land were $2,953.63. The taxes for the same year upon that portion of the new building situated thereon were $1,750.72. Section 441.13 Code of Iowa 1950, I.C.A., provides, in part, as follows:

"In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; * * *."

Under the formula adopted by the parties hereto, the assessed or actual valuation of that portion of the building on plaintiffs' lot in 1950 was $28,572.21.

The plaintiffs ask that the Court declare that the duty of paying taxes upon that portion of the new building situated on plaintiffs' lot rests upon the defendant. The defendant asks that the Court declare that such duty rests upon the plaintiffs.

In 1 American Law of Property, § 3.76 (1952), it is stated:

"The lessee is generally under no duty to pay taxes and assessments on the demised premises in the absence of a provision in the lease, * * *. There are a few exceptions to the rule that the lessee is under no duty to pay taxes on the property. Where the reversion is owned by a tax-exempt entity the lessee, by statute or decision, is sometimes considered the owner of real property and taxed upon his leasehold interest, and some statutes provide for the separate assessment of mineral leaseholds. Also, lessees under ninety-nine-year or perpetual leases are generally treated as the owners of the property for purposes of taxation."

In 32 Am.Jur., § 288, pp. 268 and 269, it is stated:

"* * * In case the assessed value of the demised premises is increased by reason of the erection of improvements by the lessee which he is entitled to remove or for which he is entitled to be compensated by the lessor, and the lease is silent as to taxes, the better view is that the amount in which the taxes are enhanced by reason of such improvements is, as between the lessor and the lessee, to be borne by the lessee * * *. But where the lessee erects improvements which are to become the property of the lessor upon expiration of the lease, such improvements are taxable to the lessor and he is liable for the taxes on them at the time they are erected and become affixed to the realty * * *."

In 73 A.L.R. 828, it is stated:

"The cases generally hold that as between landlord and tenant, where the lease is silent as to the payment of

taxes, the burden of taxes upon improvements removable by the tenant must fall on the latter."

Among the cases in accord with this last statement are: Callahan v. Broadway Nat. Bank, 1934, 286 Mass. 473, 190 N.E. 792; La Paul v. Heywood, 1911, 113 Minn. 376, 129 N.W. 763, 32 L.R.A.,N.S., 368; Witschger v. Kamages, 2d Dep't.1949, 275 App. Div. 1053, 92 N.Y.S.2d 165; State ex rel. Hansen Storage Co. v. Bodden, 1917, 166 Wis. 219, 164 N.W. 1009.

 From the foregoing statements it would appear that the lessee generally is under no duty to pay the taxes assessed against the demised premises in the absence of a provision in the lease so providing; that, in the main, exceptions from the general rule in favor of the lessor are made where the lessee is regarded as being in practical effect the owner of the demised premises; that where the value of the demised premises is enhanced by improvements erected thereon by the lessee the question as to the liability for the additional taxes occasioned thereby, in the absence of a provision in the lease relating thereto, to a large extent depends upon whether the lessee is to be regarded as the owner of them; that the lessee is to be regarded as being the owner of them where he has the right to remove them or is entitled to be compensated for them. Where a lessee holding under a lease, which in practical effect is a perpetual one, has the right to maintain improvements made by him on the leased premises, he is regarded as being the owner of the improvements for purposes of taxation. Oskaloosa Water Co. v. Board of Equalization, 1892, 84 Iowa 407, 51 N.W. 18, 15 L.R.A. 296.

In the present case the improvement involved is substantial and valuable and the building has the character of permanency; its erection was specifically provided for in the lease; the lessee has no right to remove it from the leased premises; the lease is silent as to the matter of the payment of the taxes on the underlying land, on the old building and on the new building; the lease is to expire thirty years from its commencement date and approximately nineteen years from the time the building was completed. There is no claim on the part of any party of mistake, fraud, or bad faith.

It is the claim of the plaintiffs that the defendant is to be regarded as being the owner of the new building from the time it was erected until April 30th, 1968, and as such owner is under the duty to pay any taxes assessed against it. This claim is not premised upon the theory that under the lease the defendant's occupancy and use of the premises is for an extended period of time or in perpetuity, or upon the theory that the defendant will have any beneficial use of the building or any interest therein on or after April 30th, 1968. The asserted ownership is intermediate in character and is based upon the following portion of the provision in the lease relating to alterations and construction:

"* * * All alterations so made shall be construed as an improvement to, and become a part of said real estate belonging to the Landlord upon termination or cancellation of said lease, and the Tenant shall neither have the right nor obligation to remove the same nor to change such structure or restore said premises to the condition in which they originally were, * * *."

■ ██ The plaintiffs assert that the provisions of the lease should be construed against the defendant and when so construed the defendant is to be regarded as the owner of the new building until April 30th, 1968, unless sooner cancelled, and that being the owner thereof it is under the duty to pay the taxes thereon. This assertion is based on the claim that the defendant prepared the lease and that such being the case it should be construed against it. The Iowa Supreme Court has in certain situations applied the rule that a contract is to be construed against the party who prepared it. See cases cited in Carter v. Certain-Teed Products Corp., D.C.N.D.Iowa 1952, 102 F. Supp. 280, 293. It is held that such rule of construction is not applicable where the contract is prepared with the aid and approval of and under the scrutiny of legal counsel for each of the parties thereto. Bee Bldg. Co. v. Peters Trust Co., 1921,

106 Neb. 294, 183 N.W. 302; Carter v. Certain-Teed Products Corp., 8 Cir., 1953, 200 F.2d 754. In the present case the lessors and the lessee dealt at arm's length in preparing the lease. It was prepared with the aid and approval of and under the scrutiny of legal counsel representing both parties. It is the view of the Court that the situation presented in the instant case is not one where the rule of construction referred to is applicable. (Counsel in the present case had no connection with the negotiation and execution of the lease in question.)

The plaintiffs, in connection with their claim of ownership of the building in the defendant, place some stress upon the fact that the taxing authorities of Woodbury County assessed the new building separate from the underlying land. Section 428.4, Code of Iowa 1950, I.C.A., provides, in part, as follows:

"* * * but buildings and fixtures erected on real estate held under a lease of longer than three years duration shall be assessed as real estate."

Under the normal taxing practice in Iowa buildings erected on leased ground, under a lease of less than three years' duration, are assessed as personal property. The new building, at least so far as the plaintiffs were concerned, was erected under a lease longer than three years in duration and, therefore, under the Iowa statute referred to was to be assessed as real estate. It is the view of the Court that the manner in which the taxing authorities made up their assessment rolls is not determinative of the duty to pay taxes as between the parties to the lease.

The plaintiffs, earlier in the proceedings, made a motion under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in which they asked that the defendant be required to produce those copies of its income tax returns which would show how the defendant treated the new building for federal income tax purposes. That motion was denied on the ground that "good cause" had not been shown for their production. It is the claim of the plaintiffs that such copies would have shown that the defendant was charging off the cost of the new

building over the unexpired term of the lease and that thereby it secured the "benefits of ownership" of the building during the term of the lease. United States Treasury Regulation 111 Sec. 29.23(a)–10 provides, in part, as follows:

"If a leasehold is acquired for business purposes for a specified sum, the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run. Taxes paid by a tenant to or for a landlord for business property are additional rent and constitute a deductible item to the tenant and taxable income to the landlord, the amount of the tax being deductible by the latter. The cost borne by a lessee in erecting buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In order to return to such taxpayer his investment of capital, an annual deduction may be made from gross income of an amount equal to the total cost of such improvements divided by the number of years remaining of the term of lease, and such deduction shall be in lieu of a deduction for depreciation. If the remainder of the term of lease is greater than the probable life of the buildings erected, or of the improvements made, this deduction shall take the form of an allowance for depreciation.

"In cases in which the lease contains an unexercised option of renewal, the matter of spreading such depreciation or amortization over the term of the original lease, together with the renewal period or periods, depends upon the facts in the particular case. As a general rule, unless the lease has been renewed or the facts show with reasonable certainty that the lease will be renewed, the cost or other basis of the lease or the cost of improvements shall be spread only over the number of years the lease has to run, without taking into account any right of renewal * * *."

A provision similar to the above had been in force for some time prior thereto. See United States Treasury Regulation 45, Article 109 (1920). Under this Treasury Regulation, and under the decisions, it is well established that the lessee, who makes improvements on leased business premises, is considered as having made a capital investment, and, in order to return to such taxpayer his investment of capital, he is allowed to make an annual deduction from gross income to amortize the cost thereof. The rate of amortization is based on the useful life of the improvement, or the remaining term of the lease, whichever is shorter. Rankin v. Commissioner, 6 Cir., 1932, 60 F.2d 76; George H. Bowman Co. v. Commissioner, 1929, 59 App.D.C. 13, 32 F.2d 404; Halsam Products Co. v. Commissioner, Jan. 29, 1952, 11 T.C.Memo. Op. 87; Standard Tube Co., 1946, 6 T.C. 950; Lord & Bushnell Co. v. Commissioner, 1927, 7 B.T.A. 86. See also, Duffy v. Central R. R. Co., 1925, 268 U.S. 55, 45 S.Ct. 429, 69 L.Ed. 846. When the lessor contributes a portion of the cost of permanent improvements made by the lessee, the lessor is considered to have a capital investment therein and is entitled to a depreciation allowance over the useful life of the building. See, Commissioner of Internal Revenue v. Revere Land Co., 3 Cir., 1948, 169 F.2d 469, certiorari denied, 1948, 335 U.S. 853, 69 S.Ct. 82, 93 L.Ed. 401.

■ It was the view of the Court, in denying the motion of the plaintiffs in regard to the production of copies of the defendant's income tax returns, that how the defendant might be permitted by the government to treat the new building for federal income tax purposes would not be of significance on the question here involved. It is apparent that there is only one legal and proper way in which the defendant could treat its investment in the new building for federal income tax purposes, and that is by amortizing its investment thereon over the unexpired term of the lease. It is assumed that the defendant has been, and is, treating it in that way. It is the view of the Court that the fact that the defendant is undoubtedly amortizing its investment in the new building

over the unexpired term of the lease would not be of significance on the question of the duty to pay local taxes on it. It might be noted that formerly it was held that the value of an improvement erected by the lessee, and not removable by him, was income to the lessor for federal income tax purposes when the lease terminated. Helvering v. Brunn, 1940, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864. But now the statute provides the contrary. Internal Revenue Code, § 22(b) (11), 26 U.S.C.A. 1 American Law of Property, § 3.77 (1952).

■ It has been long recognized by both the Iowa Supreme Court and the United States Court of Appeals for the Eighth Circuit that, where the parties to a contract are in controversy as to the construction of it, the practical construction placed upon its provisions by the parties prior to the time any controversy existed between them is of significance. See cases cited in Carter v. Certain-Teed Products Corp., D.C.N.D.Iowa 1952, 102 F.Supp. 280, 295, 296. Both parties during the negotiations preceding the execution of the lease and at the time of its execution had in contemplation the possible erection of a new building. In the lease it was specifically provided that such new building could not in any event have a lesser value than the old building. During the course of negotiations for the lease, the defendant proposed a lease under which the defendant was to pay the taxes upon the demised premises under a so-called "net rental lease." That proposal was rejected by the lessors. During the year of 1943 negotiations were had between the defendant and the plaintiffs in regard to a 17 year extension of the lease. The negotiations did not result in any extension or renewal of the lease. In connection with the proposed extension, the plaintiff, W. E. Beck, on August 7th, 1943, wrote the defendant, in part, as follows:

"* * * So here is our answer. We are now being over-taxed these four years when we thought we were getting a good income. And, maybe we cannot get a reduction in 1945, and so pay for years to come. Now if you will pay us an additional fifty dol-

lars a month, making the monthly rent eight hundred dollars for the additional seventeen years, and in addition agree to pay any additional taxes due to the new building, I think we are ready to sign up for the additional seventeen years.

"As you know, my sisters are not fundamentally in favor of this extension, and sometimes I waver on the proposition myself. However I am in favor of it with the reservations stated above. Our taxes for 1941 were $2485.48, and for 1942, (the first half) were $1192.63. As you perhaps well know. Now there is one other point we must settle upon and that is on what basis will we figure this increase in taxes due to the new building? Shall we set a flat figure such as $2400.00, or shall we use the increase in taxes the first year taxes are paid on the new setup and use this figure as the basis for the succeeding years?

"To summarize, our proposition for the seventeen years extension is:

Monthly rent. .$800.00

Tenant to pay increase in taxes; due to new building.

Landlord to pay all property taxes up to time assessment is made on new setup.

This agreement on taxes to become effective when new building is finished and taxed, even though it is before the expiration of the old lease * * *."

It seems clear that prior to the time the present controversy arose between the parties, in connection with the taxes for the year of 1949, the defendant and the plaintiff W. E. Beck both construed the provisions of the lease to mean that the lessors were under the duty to pay any taxes occasioned by the erection of a new building upon the demised premises.

The applicable law is that of the State of Iowa. There are no Iowa cases directly in point. In the case of Oskaloosa Water Co. v. Board of Equalization, 1892, 84 Iowa 407, 51 N.W. 18, there was involved the right of the taxing authorities to assess improvements of a permanent nature, consisting of the buildings and machinery of a waterworks company, to the lessee as real estate. The lease was to last as long as it was used to operate a waterworks and it gave the lessee the right to remove the improvements at the end of the lease. The Iowa Court took the view that the lease was in practical effect a perpetual one under which the right of removal was very unlikely to be exercised and held that the improvements were properly assessed to the lessee. That holding is not of much assistance in the present case where the lease is not perpetual in character but on the contrary was for a limited term. While, as heretofore noted, it is stated that the rule is that where an improvement of a permanent character is placed upon the leased premises by the lessee without right of removal, under a lease which is not of a long-extended duration or perpetual in character and the lease is silent as to the duty of paying the taxes thereon, the duty rests upon the lessor. The cases in which such a situation was presented are not numerous. In each case in which the situation was such there was also involved a clause in the lease somewhat similar to the clause in controversy in the present lease.

The case most strongly relied upon by the plaintiffs is the case of Roach v. Matanuska Valley Farmers Cooperating Ass'n, D.C.Alaska 1949, 87 F.Supp. 641. That case was appealed to the United States Court of Appeals for the Ninth Circuit, 1951, 188 F.2d 162, which affirmed the judgment of the trial court in the following language: "Per Curiam. The judgment in this case is affirmed for the reasons given in the opinion of District Judge Dimond, reported in 12 Alaska 512, 87 F.Supp. 641." In that case the situation was that an incompetent person owned a lot with buildings on it in the City of Anchorage, Alaska. His guardian entered into a 15-year lease of the premises for a monthly rental of $45.00. Under the provisions of the lease the lessee was given the right to tear down and remove the existing buildings and to construct a new building thereon. The lease further provided as follows: "and the said building so constructed shall be and

become the property of the first party at the expiration of this lease." The lease was completely composed and drafted by counsel for the lessee. The lease was silent as to the payment of taxes occasioned by the new building. Shortly after the execution of the lease the lessee constructed a new building on the leased premises. At the time the lease was entered into property values in the City of Anchorage were in a depressed condition. Shortly following its execution World War II broke out and the City of Anchorage experienced a boom because of military expenditures. As a result thereof the assessed valuations of property in the City of Anchorage soared and there were continued increases in the tax millages. This resulted in the taxes against the premises, including the new building, exceeding the amount of the rent being received by the lessors. The District Court was of the view that the circumstances under which the lease was drafted were such that the lease should be construed against the lessee. The District Court was also of the view that the provision in the lease, that the new building should become the property of the lessor at the expiration of the term, gave rise to the presumption of intermediate ownership of the building in the lessee until the expiration of the lease. Based upon that presumption of ownership, the District Court held that the lessee was under the duty to pay the taxes in controversy.

In the cases of People ex rel. International Nav. Co. v. Barker, 1897, 153 N.Y. 98, 47 N.E. 46 and People ex rel. Hudson River Day Line v. Franck, 1931, 257 N.Y. 69, 177 N.E. 312, the New York Court of Appeals held that where a lessee erected non-removable structures, and the lease was silent as to the payment of the taxes thereon, the taxes were to be paid by the lessor. In the latter case the Court stated that in order for the lessor to be exempted from such duty 177 N.E. at page 312 " * * * clear and explicit language must be employed, indicating with precision that the builder retains the right of removal and remains the owner. * * *" In the case of People ex rel. International Nav. Co. v. Barker, supra, the lease there involved provided

that the improvement " * * * to become the property of the parties of the first part [lessor] on the expiration or sooner determination of this lease, or any renewal thereof, free of all claims, charges, and incumbrances of every kind whatsoever, * * *." The New York Court of Appeals held that this clause could not be construed as meaning that the improvement was the property of the lessee until the lease ended. That Court stated at page 47 of 47 N.E.: " * * * When the lease in question provides that the sheds are to become the property of the city at its expiration, the language does not warrant the inference of an intermediate ownership, unless we attach an undue significance to the word 'become.' * * * Its use was evidently to prevent any misunderstanding as to a right of removal, whether under a general claim of property in the erections, or under a claim to them as trade fixtures. It was to make the city's ownership definite. * * *"

The provision of the lease under consideration in the present case, as to the matter of non-removal, relates to "all alterations." In the preceding part of the same provision the tenant is given the right to make alterations, improvements and changes in the existing building and to raze the old building and construct a new building in its place. The provision against the removal of "all alterations" might be considered, as was a somewhat similar clause in the case of People ex rel. International Nav. Co. v. Barker, supra, as making definite and certain that the defendant did not have the right to remove any improvements made by it on the leased premises either under a general claim of ownership or as trade fixtures. The Supreme Court of Iowa in the case of Oskaloosa Water Co. v. Board of Equalization, supra, in the matter of the liability for the payment of taxes as between lessor or lessee, placed stress upon the realities of the situation. In cases involving leases of long duration or perpetual leases, wherein it has been held that the lessee was under the duty of paying the taxes, the courts placed stress upon the practical and realistic aspects of the situation. In the present case, insofar as the

defendant is concerned, its rights, privileges, incidents of use, and occupation in connection with the new building are not greater nor less than they would have been if the clause in controversy had not appeared in the lease at all. If the clause in question did not add anything to the defendant's rights and privileges in and to the new building, then its inclusion in the lease was evidently for the purpose of clearly and definitely negativing any right of removal on the part of the defendant, and assuring that any and all alterations made by it could not be removed, whether under a general claim of ownership or as trade fixtures.

It would seem that if the parties had in mind that the clause in question was to cover the matter of the duty of the payment of taxes on a new building, they and their legal counsel, who formulated and scrutinized the clause, took a somewhat circuitous, devious, and obscure way of saying what could have been said by the words "the lessee shall pay the taxes on any new building erected by it." In the case of Roach v. Matanuska Valley Farmers Cooperating Assn., supra, because of the soaring of property valuations and the rapid increase in tax millages, the taxes on the leased premises, including the new building, exceeded the amount of the rent. That feature which seemed to bear weight with the Court in that case is not present in the instant case. In the present case the additional taxes occasioned by the new building are less than one-fourth of the rental of the premises.

In this case jurisdiction is based upon diversity of citizenship. There are no direct holdings of the Iowa Supreme Court on the rules of law here involved. In such a situation federal courts have to anticipate which rule, or rules, will be followed by the highest court of the state when such court is presented with a similar situation. Federal courts in the situation referred to are warranted in assuming that the highest court of the state will follow the more generally recognized rule, or rules, of law. They are not justified in assuming that such court will follow a single decision from another jurisdiction.

Werthan Bag Corp. v. Agnew, 6 Cir., 1953, 202 F.2d 119, 124, 125. While the cases on the question involved in the present case are not numerous, yet it seems to be the more generally stated or otherwise recognized rule that where a lessee erects a structure of a permanent character on the leased premises under a lease of moderate length without the right of removal that, in the absence of overriding considerations, the duty of paying the taxes thereon rests upon the lessor. In the present case no considerations are found which are generally recognized as being of an overriding character.

It is the view of the Court that, until there is a specific holding by the Iowa Supreme Court on the question here involved, it may properly be assumed that the Iowa Supreme Court would follow what seems to be the more generally recognized rule and would hold that in situations such as the one presented in the instant case the duty of paying the taxes involved rests upon the lessor. It is, therefore, the holding of the Court that the duty of paying the taxes here involved rests upon the plaintiffs and that judgment declaring such to be their duty be entered.