## ATWATER KENT MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4257.

Circuit Court of Appeals, Third Circuit.

Aug. 13, 1930.

332

Paxson Deeter, of Philadelphia, Pa., for appellant.

Sewall Key and John V. Groner, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and AVIS, District Judge.

DAVIS, Circuit Judge.

This is an appeal from an order of the United States Board of Tax Appeals disallowing a deduction of $61,270 made by the appellant in its tax return for the year 1923. The Commissioner disallowed the deduction and determined an additional tax of $7,309.32, and this determination was sustained by the Board on appeal.

There is no dispute as to the facts, nor as to the absolute good faith of the taxpayer. The question is one of law on admitted facts.

The Atwater Kent Company was making radio parts for receiving sets during the year 1922, and, under the practice then prevailing, the company did not assemble the parts. It was left to the purchasers to assemble them into radio receiving sets. In May, 1923, the Kent Company decided to change its policy, assemble the parts itself, and thereafter sell complete radio receiving sets. This required a great deal of space in addition to that which the company then had.

As the manufacture and sale of radio sets is largely a fall and winter business, it was necessary to have an assembly plant ready for use by October 1, 1923, unless that season's business was to be lost. The company was confronted with two propositions; rent an old plant or build a new one. It decided to build rather than rent. Mr. W. F. Ballinger was employed as architect, and Mr. A. Atwater Kent, president of the company, told him in the early part of May that the new plant must be ready for occupancy by October 1, 1923. It was impossible to complete the new plant by that time, except on the "cost plus basis" and by paying large bonuses for steel to secure quick fabrication and for labor to work overtime at higher rates. It was thought that the profits, which they anticipated, would justify the additional expense which the construction of the new plant by October 1st would necessitate. It was found, and about this there is no dispute, that "the excess cost to complete it (the new plant) by October 1, 1923, was not less than $61,270." This additional expense the company paid and completed the plant.

When the company came to make up its income tax return for that year, as above stated, it deducted the $61,270 which it had been compelled to expend in order to have the use of the plant in October, November, and December, of the year 1923. It is ad-

mitted that, if this extra expense had been paid out for rent, instead of expediting the completion of the new building, it would have been a legitimate deduction. The question is whether or not, having paid out the same amount to have the plant built ahead of time and take advantage of the season, it could be legally deducted by the taxpayer.

Section 234 (a) of the Revenue Act of 1921 (42 Stat. 227), under the title, "Deductions Allowed Corporations," provides:

"That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolscence."

The taxpayer contends that at the end of the year, when the new plant had been used in producing the season's profit, its depreciation on account of that use—exhaustion, wear, and tear—was at least $61,270; that the plant, the season having passed, was worth $61,270 less than it was on October 1, 1923.

Regulations 62, article 161 in force at that time, provides:

"Depreciation,—A reasonable allowance for the exhaustion, wear and tear and obsolescence of property used in the trade or business may be deducted from gross income. For convenience such an allowance will usually be referred to as depreciation, excluding from the term any idea of a mere reduction in market value not resulting from exhaustion, wear and tear or obsolescence. The proper allowance for such depreciation of any property used in the trade or business is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate) by which the aggregate of such amounts for the useful life of the property in the business will suffice, with the salvage value, and having due regard for expenditures made for current upkeep, at the end of such useful life to provide in place of property its original cost (not replacement cost) or its value as of March 1, 1913, if acquired by the taxpayer before that date."

This depreciation the petitioner says is the result of exhaustion, wear and tear, and obsolescence. The Commissioner says that this deduction may not be allowed because section 215 (a) of the act provides:

"(a) That in computing net income no deduction shall in any case be allowed in respect of— * * *

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

This simply means that the cost of a new building is a capital expense at the date of its completion. So it was in this case, when the plant was completed on October 1, 1923. The entire cost, including the bonuses, was at that time a capital expense, but, when the season was over and the new plant had been "used in the trade" to produce the season's output and profit, it was in consequence of the wear and tear and obsolescence, the passing of time, worth at least $61,240 less than it cost. This was deducted from the gross income to determine the true net income for the year. In other words, this amount was paid for the use and occupancy of the building for that season, and, when the end of that year came, the value represented by the use and occupancy of the building from October 1st was gone, and the building had depreciated to that extent and was worth just that much less. This is not a deduction under section 215 of the act, but under section 234. The depreciation permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction during the year of the capital assets through wear and tear of the plant used. The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged off is the measure of the cost of the part which has been sold. United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054. This depreciation need not be uniform, but must be reasonable.

The petitioner offered evidence at the hearing to show the actual intrinsic value of the plant at the end of the season on the theory that the difference between this and the cost on October 1, 1923, represented depreciation, for which a deduction should be allowed, but the Board refused to admit the evidence. We think this was error. Nashville, C. & St. Louis Railway Co. v. United States, 269 F. 351 (C. C. A. 6).

The order of redetermination of the United States Board of Tax Appeals is reversed, the additional tax determined by the Commissioner set aside, and the income tax return of the petitioner approved.