## FRANK & SEDER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### FRANK & SEDER, Inc., v. SAME.

#### Nos. 4199, 4200.

Circuit Court of Appeals, Third Circuit.

Oct. 3, 1930.

Stein & Salant, of New York City (Louis Salant, of New York City, of counsel), for appellants.

John V. Groner, of Washington, D. C., and J. Louis Monarch and Millar E. McGilchrist, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and L. A. Luce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

DAVIS, Circuit Judge.

These cases are here on appeal from the United States Board of Tax Appeals. Separate petitions were originally filed in the cases, but they were later consolidated before the Board because substantially the same question was involved in both, which is whether or not the amounts claimed as deductions were capital expenditures and so ratably deductible over the period of the life of the lease and buildings, or were necessary expenses incurred during the taxable year in carrying on the business and allowable as deductions for that year under section 234(a) (1) and (7) of the Revenue Act of 1918 (40 Stat. 1077), which provides that in computing the net income of a corporation subject to the tax imposed by section 230 (40 Stat. 1075) there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity; * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence;"

Section 235 of that act (40 Stat. 1080) provides that in computing net income no deductions shall in any case be allowed in respect of any items specified in section 215 (40 Stat. 1069), which provides that in computing net income, no deduction shall in any case be allowed in respect of: "(b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

Article 109 on rentals, of Treasury Regulations 45 (1920 Ed.), provides that the cost borne by a lessee in creating buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In such case in order to return to such taxpayer his investment of capital, an annual deduction may be made from gross income of any amount equal to the total cost

of such improvement divided by the number of·years remaining of the term of lease.

It plainly appears, therefore, that if the expenditures made in these cases were capital expenditures or permanent improvements or betterments within the meaning of the act, they were not deductible for the year in which made and the orders of redetermination of the Board should be affirmed.

The Frank & Seder Company conducted a department store on the premises located at 1033 Market street, Philadelphia, under a lease which expired December 31, 1918. On February 13, 1917, a new lease was made to the company for a term of nine years from January 1, 1919. Under this lease, the company could not make any alterations to the property without first obtaining the consent in writing of the lessor. If the company did obtain consent and made alterations, it had to restore the property to its original condition or leave them as made, at the option of the lessor. Permission was given the company to remove the east wall of the premises upon giving a bond of $5,000 conditioned for the restoration of the wall at the expiration of the term. The amount of the bond was the estimated cost of the restoration.

On August 16, 1918, the parties canceled the old lease and supplemental agreement and entered into a new one which ran for nineteen years from January 1, 1919, and contained the same provisions as to alterations as the old one did. On the same date they made a new supplemental agreement which gave the company permission to break through, tear down, or remove the north wall in the rear of the property at 1033 Market street and also the east wall thereof. This enabled the company to operate this property in connection with one in the rear fronting on North Eleventh street as a single department store. In lieu of restoring the walls and putting the properties in their original condition at the expiration of the lease, the company agreed to pay the lessor $25,000; $5,000 on the execution of the lease and $20,000 on February 1, 1919, with the privilege, however, of paying the $20,000 in two payments, $10,000 on February 1, 1919, and the other $10,000 on May 1, 1919. It was estimated that it would cost $20,000 to restore the north or rear wall and $5,000 to restore the east wall. The company paid $5,000 on August 16, 1918, removed the walls before January 31, 1919, and paid the $20,000, one half on February 1, 1919, and the other half on May 1, 1919.

The cost of making the alterations which rendered the buildings suitable for the company's business purposes as distinguished from the obligation to restore the property to its original condition was charged as a capital expenditure upon the company's books, but the $25,000 paid for the privilege of making the alterations and obligation to restore the walls was charged to the expense account of carrying on the business for that year. The company kept its books on the accrual basis and contends that this fixed and definite liability, incurred in the fiscal year ended January 31, 1919, is an expense deductible from income for that year and not a capital expenditure to be prorated over the life of the lease as contended by the Commissioner. There is no dispute as to the facts, but only as to the conclusion to be drawn from them.

In Office Decision 516 Cum. Bull. No. 2, p. 112, it was held that a lessee may prorate the cost of making alterations and improvements over the life of the lease and claim a suitable deduction each year therefor, but the expenses of restoring the property at the expiration of the lease will be an allowable deduction "for the year in which it is actually incurred." In the case at bar, instead of restoring the property to its original condition at the end of the lease, the company incurred and discharged the obligation to do so in the fiscal year ended January 31, 1919. The Board of Tax Appeals held to the same effect in the cases of William J. Ostheimer, 1 B. T. A. 18;· Denholm & McKay Co., 2 B. T. A. 444. The Board treated this payment as advanced rent, "since the amount paid was part of the consideration flowing from the lessees to the lessors under the lease, and the recovery of· said amount by the petitioner would necessarily have to be put out of the profits which it anticipated it would make from its business, during the life of the lease." As above stated, section 234(a)(1) of the Revenue Act of 1918 provides that there shall be allowed as deductions "all the ordinary and necessary expenses paid or incurred during the taxable year * * * * including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title." In the case of Duffy v. Central Railroad of New Jersey, 268 U. S. 55, 45 S. Ct. 429, 431, 69 L. Ed. 846, the Supreme Court said: "The term 'rentals,' since there is nothing to indicate the contrary, must be taken in its usual and ordinary sense, that is, as implying a

fixed sum, or property amounting to a fixed sum, to be paid at stated times for the use of property."

The Board defined the $25,000, the estimated cost of restoring the property, as "rent." This is not the usual and ordinary sense in which that term is used and is contrary to the meaning given to similar expenditures. It is a strained construction and not justified by the facts in the case, the language of the act, the prior regulations of the Commissioner, and decisions of the Board. O. D. 516 Cum. Bull. No. 2, p. 112; Appeal of William J. Ostheimer, 1 B. T. A. 18; Appeal of Denholm & McKay Co., 2 B. T. A. 444. This $25,000 was not "rent," but a necessary expense incurred in the taxable year in carrying on the business, and so was an allowable deduction for the year in which it was actually made.

In the second case, Frank & Seder, Inc., operated a department store in Pittsburgh which was totally destroyed by fire in February, 1917. A contract was immediately made for the erection of a new building. James L. Stuart received a fee of $40,000 as construction engineer to erect the building which was to be completed by February 1, 1918, with a provision for a bonus of $10,000 if the building was completed before December 1, 1917.

A bid of $101 per ton for structural steel from a reliable firm was rejected because it would not bind itself to deliver the steel within specified times on account of the difficulty of getting steel at that time of great industrial activity and demand for steel. In order to get the steel in time to finish the building so as to hold the winter trade and maintain the good will of the company, it was necessary to pay $116 per ton for the steel. A contract was therefore made for the quantity required at that price. This made an excess of $44,024 which was incurred solely to expedite the completion of the building in the shortest possible time so as to preserve the trade and good will of the company.

Further, in order to complete the building at the required time, it was necessary to work overtime at increased wages. The additional expense due entirely to working overtime at increased wages was $26,231. These two expenditures together with an additional payment to the architects, for expediting the completion of the building, aggregated $84,372.-75.

The building would have been finished at the stipulated time, had it not been delayed by general strikes which affected this and other buildings. In accordance with a provision in the contract, the time for completing the building was extended on account of strikes to May 1, 1918. Had the completion of the building not been expedited by these additional payments, it would not have been finished, on account of the strikes, until January 1, 1919.

The question is whether or not this additional expense of $84,372.75, having been spent in the fiscal year ended January 31, 1919, for the sole purpose of completing the building, and resuming business on May 1, 1918, instead of January 1, 1919, is an expense deductible from the income for that year. The petitioner contends that it is, but the Commissioner contends that it, like all ordinary capital expenditures, must be spread over the life of the lease and building. The Board of Tax Appeals sustained the contention of the Commissioner and the taxpayer appealed to this court.

If this expense of expediting the completion of the building may be allowed as a deduction, it must be because it was a necessary expense paid or incurred during the taxable year in carrying on the business or for the exhaustion, wear, and tear of the property used in the business. Usually the costs of material and labor are reflected in the building throughout its life. So far as the building does not remain permanent year by year, the owner is allowed a deduction and this in the years in which it occurs.

The expense paid for expediting the completion of the building was necessary in order to carry on the business during the fiscal year from May 1, 1918, to January 31, 1919. Without this additional expense there would have been no business conducted by the taxpayer during that time unless the company had rented a building, and if it had done so, the rent could have been deducted as a necessary expense incurred in carrying on the business. But instead of renting a building, the taxpayer expedited the completion of its own. Whether it was a better business policy to rent a building from May 1, 1918, to January 31, 1919, than to expedite the completion of its own, may be a debatable question. But however that may be, the expense was incurred, and to carry on the business as planned it was necessary, and the evidence does not establish it to have been foolish or inexpedient. Consequently this was a necessary expense incurred during the taxable year in carrying on the business for which the statute authorizes a deduction.

Therefore the deduction should have been allowed.

. The completed building on May 1, 1918, was worth what the expedition of the completion cost over what it would have cost to complete it by January 31, 1919. The exhaustion because of the wear and tear in carrying on the business between May 1, 1918, and January 31, 1919, was just this difference and for this a deduction should be allowed. Atwater Kent Manufacturing Company v. Commissioner of Internal Revenue (C. C. A.) 43 F.(2d) 331.

The order of redetermination of the United States Board of Tax Appeals is reversed, the additional tax determined by the Commissioner set aside, and the income tax return of the petitioner approved.