## RANKIN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5886.

Circuit Court of Appeals, Sixth Circuit. June 27, 1932.

J. G. Korner, Jr., of Washington, D. C., for petitioner.

John M. Hudson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and

Sewall Key, Norman D. Keller, C. M. Charest, and De Witt M. Evans, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

On June 15, 1920, the petitioner, a publisher in Nashville, Tenn., entered into a written agreement with his sister-in-law for the use of her residence for his plant. The agreement was to run "until such time" as the petitioner should purchase the property, but not exceeding a period of two years. Meanwhile, until the petitioner consummated the purchase, he was to pay the insurance and taxes and a rental of $150 a month, the equivalent of 6 per cent. per annum on $30,000, the agreed value of the property. He was also to expend not less than $10,000 for improvements necessary to adapt the property to the needs of his plant. The agreement obligated the owner to sell the property to petitioner for $30,000 and execute conveyances thereto at any time within the two years upon his paying $10,000 in cash and executing notes for the balance of the purchase price bearing interest at the rate of 6 per cent. per annum. It specifically obligated the petitioner to purchase the property within the two years upon the terms mentioned. The purchase was not consummated, but before the expiration of the two years a renewal agreement was entered into extending the original one for a year. Other agreements followed, each entered into before the expiration of the preceding one and each extending the preceding one upon the same terms and conditions for another year.

■■ While occupying the premises the petitioner, in the taxable years here involved —1922 to 1925, inclusive—made certain capital expenditures for alterations and improvements on the property. In his tax returns for such years he claimed that the expenditures should be exhausted within the term of the agreement in existence at the time they were made. The Commissioner and Board of Tax Appeals determined that they should be distributed over the respective lives of the several improvements.

The question depends upon the construction to be placed on the original and successive agreements. The petitioner contends that they were only leases with an option to purchase. We are of the opinion, as was the Board of Tax Appeals, that they were contracts of purchase. To construe them differently would be inconsistent with the intention of the parties as evidenced by their conduct. Before the original contract was made the owner asked the petitioner if he "could not get rid of her home for her," and the petitioner himself testified that when he located the plant on the property "it was with the idea of making it a permanent place of business, as I had no other plant." The property was valued at $30,000, and the petitioner agreed to pay, until he should "choose to purchase," a rental on the basis of 6 per cent. of this agreed purchase price. He continued to pay this rental after making extensive improvements. During the first year of his occupancy of the property he expended about $10,000 upon it, and he has expended in all approximately $30,000. These expenditures were for changes and alterations that rendered the property unadaptable for any uses except those for which the petitioner alone had need. It would be unreasonable to suppose that he would have made or the owner permitted such changes had they not considered the agreement tantamount to a sale and the petitioner in fact the owner of the property. Besides, as already pointed out, he obligated himself in each of the agreements to purchase the property at a specified price, stipulating how the payments were to be made, and the owner definitely agreed to sell it upon the terms stated. Plainly there was a contract of sale which could have been enforced in a court of equity by either party. Certainly the property was taken over with the intention permanently to occupy it and with the right so to do. That this right was not put in the form of legal title is immaterial, since it existed and could have been enforced. There is nothing in the evidence to show that it may not now be enforced or that it will not continue for a period beyond the physical life of the improvements. It is not necessary, in a case of this kind, that the taxpayer be the owner of the legal title. It is sufficient if it appear that his use or occupancy will exceed the life of the improvement. The Board found that it would in this instance, and its finding is supported by substantial evidence.

■ The other question involved relates to wages paid to a mechanic while waiting to install a printing press. In 1924 the petitioner bought from a manufacturer a two-color printing press and employed a mechanic to install it. Some parts of the press were stolen, and it was necessary for petitioner to obtain new parts. While these parts were being manufactured a strike occurred in the

plant of the company making them, and their delivery was delayed. Meanwhile for twenty-three days the mechanic was idle, and the petitioner was compelled to pay his wages and expenses. This amounted to $478.40 of the total paid for the installation, $555.69. The petitioner concedes that the wages paid for actually installing the press were properly capitalized, but insists that the wages and expenses of the mechanic while waiting should be deducted as an operating expense or loss. The Board of Tax Appeals held that these items should also be charged to capital assets upon the theory that it would be going too far to say that only the installation expenses ordinarily required should be capitalized.

While it is true it would be impractical to say that only the ideal costs of installation should be capitalized, and that all costs exceeding what might reasonably be expected under normal conditions should be treated as a business expense or loss, yet where the costs arising from an unexpected contingency are as disproportionate to what is normally to be expected as those in this instance, it seems only fair to say that they should not be capitalized as a part of the improvement. We have been cited to no decision dealing specifically with the question; but compare Zimmern v. Commissioner (C. C. A.), 28 F.(2d) 769; Atwater Kent Mfg. Co. v. Commissioner (C. C. A.) 43 F.(2d) 331, and Frank & Seder v. Commissioner (C. C. A.) 44 F.(2d) 147.

The decision of the Board is affirmed as to the years 1922, 1923, and 1925, but is reversed as to the year 1924, with direction to recompute the tax upon the basis of an allowance of the expenditure of $478.40 as a business expense.