FISHING TACKLE PRODUCTS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SOUTH BEND BAIT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54757, 54758. Filed January 10, 1957.

*James F. Thornburg, Esq.*, and *Casimer J. Major, Esq.*, for the petitioners.

*John L. Carey, Esq.*, for the respondent.

OPINION.

BRUCE, *Judge:*

*Issue 1.*

The first issue for decision is whether petitioner South Bend Bait Company, under the provisions of section 23 (a) (1) (A), Internal Revenue Code of 1939,[1] may deduct as ordinary and necessary business expenses paid or incurred in its taxable years ending in 1949 and 1950 the amounts of $52,279.37 and $66,415.77, respectively, which amounts South Bend had paid to its subsidiary, Fishing Tackle Products Company, to reimburse Tackle for operating losses suffered by it during such taxable years.

The determination of what constitutes an ordinary and necessary business expense involves the appreciation of particular situations and facts peculiar to the case in issue. *Welch* v. *Helvering*, 290 U. S. 111.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; * * * and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

However, it is well settled that expenditures made to protect and promote the taxpayer's business, and which do not result in the acquisition of a capital asset, are deductible. *Scruggs-Vandervoort-Barney, Inc.*, 7 T. C. 779; *Charles J. Dinardo*, 22 T. C. 430.

In the instant case, South Bend received no stock or capital assets for the payments made by it to reimburse Tackle for the operating losses suffered by the latter during the taxable years ending in 1949 and 1950. Nor does it appear that Tackle was inadequately capitalized. In no sense, therefore, did the payments made by South Bend constitute capital expenditures. On the contrary, Tackle was South Bend's sole source of metal and glass fishing rods with the patented stepdown feature. Without this source South Bend would have been unable to meet the demands of customers for these rods and both its sales and its position in the industry would have suffered. The payments involved were made to maintain and preserve this source of supply and were clearly a business necessity. *Scruggs-Vandervoort-Barney, Inc.; Charles J. Dinardo*, both *supra*.

Moreover, it appears that the net operating losses suffered by Tackle resulted from the inability of the engineers to determine accurately, in advance, the manufacturing costs of the new type rods. South Bend realized that losses might occur and accordingly, as soon as the amount could accurately be determined, reimbursed Tackle to the extent of such losses. In effect, such reimbursement was merely an adjustment of the price of the rods sold to South Bend.

Whether considered as a business necessity or an adjustment of price, it is clear, and we so hold, that such payments were ordinary and necessary business expenses and are deductible as such within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code of 1939.

In urging that such payments were not ordinary and necessary business expenses, respondent has relied upon *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590; *National Carbide Corporation* v. *Commissioner*, 336 U. S. 422; *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436; and *Los Angeles & Salt Lake Railroad Co.*, 4 T. C. 634. These cases are distinguishable. In the *Interstate Transit* case the parent corporation was denied a deduction because the business conducted by its subsidiary was one which the parent was forbidden by law to engage in. In the *Los Angeles & Salt Lake* case a deduction with respect to losses reimbursed by the parent corporation to one of its subsidiaries was denied for similar reasons, and a deduction with respect to losses reimbursed to another subsidiary was not allowed because the business necessity for the expenditure was not established. Neither the *National Carbide* nor the *Moline Properties* case was concerned with the question of the deductibility of a business expense.

*Issue 2.*

The second issue is whether attorney fees, Indiana Securities Commission costs, and secretary of state of Indiana costs, aggregating $936.31, all of which expenses were incurred by petitioner South Bend in connection with increasing its capitalization, are deductible as business expenses.

Petitioner concedes that expenses incurred in organizing a corporation or increasing its capitalization have been held to be capital expenditures. See *Motion Pictures Capital Corporation* v. *Commissioner*, 80 F. 2d 872, affirming 32 B. T. A. 399; *Skenandoa Rayon Corporation* v. *Commissioner*, 122 F. 2d 268, certiorari denied 314 U. S. 696. Petitioner contends that such expenses are deductible in the instant case since the increase in capitalization was for the purpose of "permitting employees of petitioner to acquire a proprietary interest in petitioner in order that petitioner might be assured of such employees' loyalty and improved devotion to service * * *." Petitioner analogizes this situation with that of establishment of a pension trust wherein the attorney fees incurred in arranging such a trust have been held to be deductible. *Meldrum & Fewsmith, Inc.*, 20 T. C. 790, affirmed without discussion of this point 230 F. 2d 283.

The purpose of petitioner in increasing its capitalization is immaterial. Such expenses were a cost of acquiring capital and accordingly are not deductible.

*Issue 3.*

The third issue is whether petitioner Tackle is entitled to deduct as an ordinary and necessary business expense the entire amount of "rental" paid to Spencer Industries, Inc., for the use and occupancy of the plant site and facilities located at Spencer, Iowa. Respondent determined that one-half of such payments for each of the years in issue—$5,000 in 1949 and $6,000 each for 1950 and 1951—were not rental payments but rather that Tackle was acquiring an equity interest in the property in such amounts by virtue of the purchase option provisions in the lease agreement executed between Spencer Industries, Inc., and South Bend, and, accordingly, disallowed the deduction of such amounts pursuant to the provisions of section 23 (a) (1) (A), Internal Revenue Code of 1939.

The respondent's determination insofar as such payments are concerned cannot be sustained. Under the lease between it and Spencer Industries, Inc., South Bend is the sole lessee of the plant site and facilities located at Spencer, Iowa. Tackle is not a party to that lease and there has been no assignment of the lease by South Bend to Tackle. While Tackle is occupying and using the property, it is doing so at the instance of South Bend, apparently without objection on the part

of Spencer Industries, Inc. Such use and occupancy is consistent with that of a sublessee or tenant at will and does not necessarily confer upon Tackle the option right contained in the lease between South Bend and Spencer Industries, Inc. The chairman of the board of directors of South Bend, its president during the years involved, and likewise an officer and director of Tackle, testified without contradiction that this lease had never been assigned to Tackle and there was no "understanding, written or oral, formal or informal, between South Bend Bait Company and Fishing Tackle Products Company with respect to the transfer of that lease to Fishing Tackle Products Company." He further testified, without contradiction, that there was no such understanding "with respect to how long Fishing Tackle Products Company shall be entitled to have the use and possession of the Spencer property." It is clear from these facts that Tackle is not entitled to exercise the purchase option provided by such lease and, accordingly, is not acquiring an equity in the property within the meaning of section 23 (a) (1) (A). There is no evidence, and we do not understand respondent to contend, that the $1,000 per month paid as rental was unreasonable or excessive. Accordingly, we hold that the entire rental payments involved herein which were paid during the fiscal years ending in 1949, 1950, and 1951 are deductible by Tackle as business expenses.

## *Issue 4.*

The last issue involves the determination of the depreciation period of permanent improvements made to the leasehold by Tackle. Respondent determined that the useful life of such improvements was the proper period to use in computing the annual depreciation allowances for such improvements. Tackle contends, however, that the cost of such improvements should be amortized over the period of the lease remaining after such improvements were added.

The general rule for depreciation of leasehold improvements made by the lessee where the lease is for a fixed period is that the cost of such improvements shall be amortized over the remaining term of the lease or the useful life of the improvements, whichever is shorter. *Duffy* v. *Central Railroad Co. of New Jersey*, 268 U. S. 55; *Fort Wharf Ice Co.*, 23 T. C. 202; 4 Mertens, Law of Federal Income Taxation sec. 23.92; Regs. 111, sec. 29.23(a)-10.

It is also well settled that where a lessee makes improvements on property leased for an indefinite period on a month-to-month basis or under a tenancy at will, depreciation is to be based on the estimated life of the improvements. See *George H. Bowman Co.*, 7 B. T. A. 399, affd. 32 F. 2d 404. In that case the petitioner occupied a warehouse used in carrying on its business, without having a lease for any stated period of time; its tenancy was indefinite, no arrangements having been made between it and the owner as to such occupancy, other than

that petitioner should pay monthly rental in a fixed amount which had no relation to the improvements in question. We there said:

The duration of petitioner's tenancy of the building was indefinite and indeterminable. It occupied the premises at the will of the lessor and until it appears that petitioner's tenancy will end at some definite time, it is entitled to a deduction in the taxable year of no more than a reasonable allowance for the exhaustion of the cost of improvements over the useful life thereof. If petitioner's tenure extends over the period of the useful life of the improvements it will have recovered its cost through the annual allowance for exhaustion; if the tenure should for any reason terminate prior to the useful life of the improvements petitioner will then be entitled to a deduction from gross income of the unextinguished cost of such improvements. In either event petitioner will have obtained the deduction to which, under the statute, it is entitled. * * *

In the instant case Tackle's occupancy of the property involved is subject to the continued consent of South Bend. In that respect it is a tenancy for an indefinite period. If South Bend were the owner of the property or if South Bend's lease were for a period in excess of the estimated useful life of the improvements, Tackle would only be entitled to amortize the cost of the improvements made by it over the useful life of such improvements. Here, however, South Bend's tenancy is only for a period of 10 years with no expressed right of renewal. Although South Bend has an option to purchase the leasehold property, it has as yet indicated no intention to exercise such option. Under the circumstances it appears that Tackle's tenancy is presently limited by the 10-year period of South Bend's lease. Accordingly, we hold that Tackle is entitled to amortize the cost of the improvements made by it over the period of the 10-year lease remaining after such improvements were added. *Rankin v. Commissioner*, 60 F. 2d 76; *Leonard Refineries, Inc.*, 11 T. C. 1000; and *Harry Gleis*, 24 T. C. 941 (on appeal C. A. 6), relied upon by respondent, are distinguishable. In the *Rankin* case it was held that the contract under which the property was occupied was a contract of purchase and not a lease with option to purchase. In both the *Leonard Refineries* and the *Gleis* cases, it was found as a fact that the lessee intended to exercise the purchase option contained in the lease under which the property was being occupied.

*Decisions will be entered under Rule 50.*