LORD & BUSHNELL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10597, 12124.   Promulgated May 25, 1927.

1. AMENDMENT OF PETITION.—The petition in Docket No. 10597 stated that it was an appeal from the determination of deficiencies for the years 1917 and 1918. It plainly referred to a deficiency letter dated November 10, 1925, which asserted deficiencies for the years 1918 and 1919, recited the amounts of such deficiencies, and the whole context was such that no one was likely to be misled and, in fact, the respondent was not misled by the recital of the year 1917 in place of the year 1919. *Held,* that the motion to amend the petition was properly granted as a matter of course and that the Board acquired jurisdiction of the deficiency for the year 1919.

2. INVESTED CAPITAL.—The cost of petitioner's plant and equipment as shown by the evidence determined for the purposes of invested capital.

3. DEPRECIATION.—Petitioner's plant and equipment was situated upon land held under an indeterminate lease from 1911 to August 1, 1917, and thereafter, under the terms of a lease expiring on April 30, 1932. The deduction for exhaustion, wear and tear of those portions of the plant and equipment having a probable useful life running beyond April 30, 1932, should be computed on the basis of such probable life up to August 1, 1917, and upon the unextinguished balance the depreciation deduction should be computed upon the basis of the term of the lease. Other items of plant and equipment having a probable useful life ending prior to the term of the lease, should be the basis of an exhaustion deduction in proportion to the period of their useful life.

*William W. Thompson, C. P. A., C. E. Burrows, Esq.*, and *D. J. Greenburg, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the respondent.

These two proceedings, consolidated for the purpose of hearing and redetermination, are from the Commissioner's statutory deficiency notices dated November 10, 1925, and January 14, 1926, asserting deficiencies in income and profits taxes in the amounts of $52,517.80 for the years 1918 and 1919, and $410.62 for the year 1921, respectively.

The petitioner alleges that the Commissioner erred in his determination (1) of the March 1, 1913, value of the petitioner's lumberyard and equipment for the purpose of depreciation and as to the rates of depreciation; (2) of the petitioner's invested capital for the years 1918 and 1919, and (3) in not allowing as to the years 1918 and 1919 special assessment under sections 327 and 328 of the Revenue Act of 1918.

The Commissioner asserts that the Board is without jurisdiction as to the year 1919 for the reason that no appeal as to that year has been taken within 60 days from the date of mailing of the statutory deficiency notice.

#### FINDINGS OF FACT.

The petitioner is an Illinois corporation having its principal place of business at Chicago. It was incorporated in 1883, and since that time has been engaged in buying and selling lumber.

The Commissioner's deficiency letter dated November 10, 1925, asserts a deficiency in income and profits taxes for the years 1918 and 1919 in the amount of $52,517.80. On January 4, 1926, the petitioner filed an appeal, Docket No. 10597, from that determination by the Commissioner and alleged that the deficiency letter was

dated November 10, 1925, and asserted a deficiency of $52,517.80, and that the years involved were 1917 and 1918.

The Commissioner's answer, filed on February 12, 1926, admits and denies the allegations of the petition as to the years 1918 and 1919, and denies as irrelevant and immaterial what action the Commissioner took as to the year 1917. On April 3, 1926, the petitioner submitted to the Board an amended petition not complete in itself but merely a correction of its original petition so that the years involved would be 1918 and 1919. No action was taken on this amended petition until the hearing on the merits was had, at which time leave was granted the petitioner to file the said amended petition. The Commissioner objected to the filing of the amended petition on the ground that as to the year 1919 no appeal has been filed within 60 days from the mailing of the deficiency letter and that the Board is without jurisdiction as to that year.

Prior to the year 1912 the petitioner's lumberyard had been located at Twenty-second and Center Avenue, Chicago, but its lease for those premises having expired, it was necessary for the petitioner to vacate.

During the years 1911 and 1912 the petitioner constructed a new lumberyard at 2424 Laflin Street, Chicago, its present place of business. An entire new plant was erected and was completed in the spring of 1912. In constructing the new lumberyard the swampy ground upon which it was built was filled in and graded, about three-quarters of a mile of railroad track was laid, and there was erected one inclosed and one open dock; a reenforced concrete 2½-story mill building, 66 by 153 feet; a brick-and-reenforced-concrete two-story-and-basement office building, 33 by 56 feet, with modern improvements; a brick-and-concrete barn, 31 by 47 feet; a brick-and-concrete garage, 22 by 29 feet; a brick lunch-room building, 33 by 45 feet; 4 one-story lumber sheds respectively 99 by 233 feet, 52 by 233 feet, 76 by 168 feet, and 19 by 92 feet, each constructed of wood, with tar-and-gravel roofing and plank siding, and upon a foundation of concrete piers. All of the buildings had tar-and-gravel roofing; concrete paving, and plank roads. In 1912 new machinery was installed and some new equipment. One small machine and some equipment was removed from the old lumberyard.

The petitioner used its own labor and materials for filling and grading the yard, grading and laying the railroad track, building a portion of the docks and building the plank roads. The docks, buildings, and concrete paving were constructed by contractors, but the petitioner supplied all lumber used at wholesale cost.

The plank roads were constructed by filling with cinders, laying down oak and maple stringers covered with 3-inch maple planks. A total of 1,136,000 board feet of lumber, at an average cost of $20

per thousand feet, was used in constructing the plank roads, representing a cost of $22,720 exclusive of labor, but only $11,116.58 was charged to capital account on petitioner's books. Upon examination of petitioner's accounts kept during the years 1911 and 1912 it was found that the cost to the petitioner of the quantity of lumber used in constructing these plank roads, and the labor employed in such construction, was $25,300.75.

The docks were constructed by the Great Lakes Dredge & Dock Co. under a contract which specified that the petitioner deliver at the dock sites a certain quantity of lumber at cost to it at its yard. The petitioner supplied all the lumber used in the docks except the piles, supplied much heavier battens than were called for by the contract, and billed the dock company for only that amount of lumber called for by the contract, although much additional lumber was used. The lumber which the petitioner supplied for the docks cost it approximately $27 per thousand feet, whereas the retail price was approximately 50 per cent more. The contract price for the construction of the docks was $28,105.88, which was entered upon the capital account of the petitioner's books as the cost of the docks, although the dock company did only a part of the actual construction work, the balance having been done by the petitioner with its own labor and materials. Upon examination of petitioner's books kept during the years 1911 and 1912, it was found that labor and material furnished by the petitioner in the construction of these docks over and above the amount billed to the contractor had cost the petitioner $13,045.33, and that the total cost of the docks as completed in 1912 was $41,151.21.

The buildings, lumber sheds and the concrete paving were constructed by contractors and the petitioner billed to the contractors, at cost to it, only that amount of lumber called for by the contracts, although additional lumber was used. The petitioner charged $40,741.48, the contract price, to capital account as the total cost of the construction of the buildings. Upon examination of the petitioner's books kept during the years 1911 and 1912, it was found that the petitioner had furnished toward the construction of these buildings labor and material costing $4,286.42 which .had not been billed to the contractor, and that the total cost of these buildings when completed in 1912 was $45,027.90.

In ascertaining the additional capital cost of each of the foregoing classes of construction the petitioner used the same labor and material costs as shown by its books of account kept during the years 1911 and 1912.

When, in 1912, the petitioner had completed its new yards, it charged to capital account for machinery, equipment, and properties not hereinabove mentioned, the total sum of $38,891.06. Upon

examination of its books of account kept during 1911 and 1912, it was found that there had been charged to expense capital items with respect to properties, machinery and equipment in an aggregate of $10,529.39, making a total of machinery, equipment, and miscellaneous property with an aggregate cost in 1912 of $49,420.45.

The ground upon which the new lumberyard was erected was, and is now, owned by Frederick B. Bolles, who was until 1917 the principal stockholder and the active manager of the petitioner. The petitioner had no lease to the property at any time prior to August, 1917. In the fall of 1917 Bolles sold his stock to John Claney and Claney's brothers and retired from the business. On August 1, 1917, Bolles entered into a lease with the petitioner which provides, among other things not material to this proceeding, that upon the termination of the lease on April 30, 1932, all the buildings and permanent improvements on the premises shall be a part of the freehold and the property of the lessor. There is no provision for a renewal of the lease.

The cost of petitioner's plant, properties, and equipment, itemized in accordance with the evidence, the normal rates of depreciation applicable to each item, and the rates of depreciation applicable to those items having a normal life running beyond the termination of the lease, are as follows:

| | Cost | Normal rates | Depreciation—Rates to amortize remaining value over life of lease from Aug. 1, 1917, to Apr. 30, 1932 |
|---|---|---|---|
| | | *Per cent* | *Per cent* |
| Construction | $45,027.90 | 3 | 6.78 |
| Machine foundations | 1,054.20 | 3 | 6.78 |
| Heating system | 1,032.44 | 5 | 6.78 |
| Plank roads | 25,300.75 | 10 | |
| Plumbing | 1,433.01 | 5 | 6.78 |
| Paving | 7,267.12 | 5 | 6.78 |
| Docks | 41,151.21 | 10 | 6.78 |
| Electric lighting system | 1,598.77 | 5 | 6.78 |
| General machinery | 15,998.32 | 10 | |
| Motors | 4,799.30 | 10 | |
| Power transmission | 738.69 | 10 | |
| Power feed wiring | 1,715.82 | 10 | |
| Exhaust and blower system | 1,392.37 | 10 | |
| Fire apparatus | 39.00 | 10 | |
| Trucks and scales | 123.69 | 10 | |
| Signs | 525.00 | 10 | |
| Railroad tracks | 3,272.30 | 3 | 6.78 |
| Horses | 3,699.30 | 10 | |
| Wagons | 1,764.00 | 10 | |
| Harness and stable equipment | 142.30 | 10 | |
| Office furniture and fixtures | 987.59 | 10 | |
| Office machines | 31.00 | 10 | |
| Miscellaneous equipment | 1,806.13 | 33⅓ | |
| Total | 160,900.21 | | |

There is no dispute as to the additions and improvements made to the petitioner's assets subsequent to March 1, 1913.

The Commissioner used the book value of the capital assets for the purposes of invested capital and depreciation and has applied, during the years here in question, rates of depreciation without regard to the lease for the premises occupied by the petitioner.

The Commissioner found that a computation of excess and war-profits taxes under the provisions of section 328 of the Revenue Act of 1918 would afford the petitioner no relief.

OPINION.

TRUSSELL: The original petition in Docket No. 10597 recited that the years under consideration were 1917 and 1918. The context in which these figures were used with references to the deficiency letter, and a copy of the deficiency letter attached to the petition, all made it plain that the years for which the petitioner was appealing to this Board were the years 1918 and 1919. This is so apparent that to our mind no one reading the petition and the deficiency letter could have been misled on account of the recital of the years in question. It is plain from the respondent's answer that the respondent was in no way misled by the erroneous recital. We are, therefore, of the opinion and have held, that the petitioner's request to amend the petition should have been, as it was at the trial, granted as a matter of course, and that the Board acquired jurisdiction of the deficiency for the year 1919 by virtue of the original petition.

The record of this case contains convincing evidence that the petitioner's capital accounts so far as they involved the construction of its new lumberyards and properties in the years 1911 and 1912, were incomplete and that much of the material and labor which then went into permanent improvements was incorrectly charged to expense. In so far as the evidence has identified these charges to expense they have been restored to capital account as recited in the findings of fact.

The record contains much testimony offered to prove a March 1, 1913, value of plant and equipment. A retrospective appraisal showing a detailed and valued inventory was received and the testimony of four capable men having experience as builders and appraisers was also received. This testimony varied according to the witnesses in total valuations ranging from $250,000 to more than $270,000, and, while we may not doubt that all of this testimony was offered in good faith, we can not overlook the fact that these properties were acquired one and two years prior to March 1, 1913,

and that the spread between the proven cost and the values testified to by the witnesses is so great that it relieves the opinion testimony of much of the weight that it might otherwise have had. We are of the opinion that the corrected costs as set forth in the findings of fact are the substantial equivalent of the March 1, 1913, value.

No testimony was introduced in support of petitioner's claim for relief under section 328 of the Revenue Act of 1918. The deficiencies must therefore be determined without resort to the provisions of that section.

> *The deficiencies may be redetermined in accordance with the foregoing findings of fact and opinion on 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.*