T.C. Memo. 2008-255

UNITED STATES TAX COURT

HENRY J. AND PATRICIA K. LANGER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13884-05.          Filed November 12, 2008.

Henry J. and Patricia K. Langer, pro sese.

<u>David L. Zoss</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 2001 Federal income tax of $56,474 and an accuracy-related penalty under section 6662 of $11,295.[1]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded
(continued...)

After concessions, the issues for decision are whether petitioners are entitled to business expense deductions in an amount greater than respondent allowed, and whether petitioners are liable for an accuracy-related penalty under section 6662.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Minnesota at the time their petition was filed.

In 1984 petitioners purchased their 5,500-square-foot home for $501,358, and they have lived there at all times since. Petitioners claim that in 1995 additional work was done to the driveway and exterior lighting of their residence at a total cost of $31,641. In 1999 they added a low-voltage outdoor lighting system at a cost of $18,945, and the property was landscaped at a cost of $9,420.

Mrs. Langer, a piano teacher, has operated a piano teaching business from petitioners' residence since its purchase. See Langer v. Commissioner, T.C. Memo. 1992-46 (discussing the use of the home for piano teaching and finding that 315 square feet of petitioners' home was used as a piano studio), affd. 989 F.2d 294 (8th Cir. 1993). Since June 1996 Mr. Langer, a former Internal Revenue Service agent, has operated a financial investigations

---

[1](...continued)
to the nearest dollar.

business out of petitioners' residence.  Mr. Langer used office space in the residence, which from 1984 to 1996 had been used by a greeting card company run by Mrs. Langer and her sisters.  See id. (finding that 400 square feet of petitioners' home was used by the greeting card company).

Petitioners prepared their own joint Form 1040, U.S. Individual Income Tax Return, for 2001 and submitted it to respondent on May 8, 2002.  The return included two Schedules C, Profit or Loss from Business, one for Mr. Langer's investigations business and one for Mrs. Langer's piano teaching business.  Both of the Schedules C reported substantial expenses with respect to the businesses, including home office expenses and related depreciation of the home, lighting, driveway, and landscaping.

On April 21, 2005, respondent issued petitioners a notice of deficiency for 2001.[2]  Respondent disallowed most of petitioners'

---

[2]In 2003 petitioners' 2001 return was selected for examination as part of respondent's National Research Project (NRP).  Petitioners contested respondent's right to examine them as part of the NRP.  Respondent issued petitioners administrative summonses for information with respect to their 2001 return. Petitioners contested enforcement of the summons in the U.S. District Court for the District of Minnesota.  On Nov. 24, 2004, the District Court issued an order enforcing the summons.  On Apr. 1, 2005, petitioners deposited their records with the District Court.  Petitioners appealed the order to the U.S. Court of Appeals for the Eighth Circuit, which affirmed the order on Dec. 29, 2005.  United States v. Langer, 158 Fed. Appx. 759 (8th Cir. 2005).  Petitioners subsequently petitioned the Supreme Court of the United States for certiorari, but the Court denied the petition on Oct. 10, 2006.

Schedule C expenses.  Petitioners timely filed a petition with this Court, and a trial was held in St. Paul, Minnesota.

OPINION

I.   An Overview of the Evidence

On the basis of documentation petitioners provided, respondent conceded that petitioners are entitled to some of the disallowed business expense deductions, while petitioners conceded they are not entitled to others.  As evidence that the remaining expenses should be allowed, petitioners presented only Mr. Langer's testimony and scant documentary evidence.  Although Mr. Langer testified with detail as to some of the disallowed deductions, he merely identified others, and others were not mentioned at all.  His testimony was largely uncorroborated, and we do not find it credible.  Under the circumstances, we are not required to accept Mr. Langer's uncorroborated, self-serving testimony, and we do not.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

II.  Business Expense Deductions Not Related to the Use of Petitioners' Residence

Deductions are a matter of "legislative grace", and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see also Rule 142(a).  As a general rule, section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or

incurred during the taxable year in carrying on any trade or business". An expense is ordinary for purposes of this section if it is normal or customary within a particular trade, business, or industry. Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Section 262(a), in contrast, precludes deduction of "personal, living, or family expenses."

The breadth of section 162(a) is limited by the requirement that any amount claimed as a business expense deduction must be substantiated, and taxpayers are required to maintain records sufficient therefor. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. Furthermore, business expenses described in section 274 are subject to strict substantiation rules. Section 274(d) provides that no deduction shall be allowed for, among other things, traveling expenses, entertainment expenses, gifts, and expenses with respect to listed property (including passenger automobiles) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) The amount of the expenditure or use; (2) the time and place of the expenditure or use, or date and description of the gift; (3) the business purpose of the expenditure or use; and (4) in the case

of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained.

In addition to the general business expense deduction rule of section 162, section 167(a) authorizes "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--(1) of property used in the trade or business, or (2) of property held for the production of income." Depreciation deductions are calculated with respect to the adjusted basis of the property determined under section 1011, the applicable depreciation method, the applicable recovery period, and the applicable convention. Secs. 167(c), 168(a); Hosp. Corp. of Am. v. Commissioner, 109 T.C. 21, 45 (1997).

A.   Expenses Related to Piano Teaching

Respondent disallowed petitioners' $9,003 Schedule C deduction for "supplies" that comprised numerous separate items. Respondent conceded that petitioners are entitled to $7,327 of those expenses. Mr. Langer testified as to two of the disallowed expenses:  $70 spent at the Georgetown University Medical Bookstore and $189 spent at the African Art Museum. Mr. Langer testified that Mrs. Langer intended to give these to her students as awards. However, the purchases are unidentified, and there is no evidence Mrs. Langer actually gave them to her students, or that if given to her students, they were awards and not gifts,

which would be subject to strict substantiation requirements.  No evidence was presented as to the other deductions not conceded by respondent.  Accordingly, petitioners are not entitled to the Schedule C "supplies" expense in an amount greater than respondent allowed.

Mrs. Langer's Schedule C expenses included a $24,601 deduction for a category of items labeled "incentive programs". Respondent conceded $1,592 of the expenses.  Mr. Langer testified as to some of the disputed expenses.  The disputed items include expenses for entertainment, gifts/awards to students, business meals, and travel away from home, all subject to the strict substantiation requirements of section 274(d).  Petitioners have not substantiated those amounts in accordance with section 274(d).

The awards given to her students present the same problem as the awards from Georgetown's bookstore and the African Art Museum discussed above.  The purchases are unidentified, and there is no evidence Mrs. Langer actually gave them to her students, or that if given to her students, they were not gifts.

Other expenses are clearly personal and not business expenses.  For example, petitioners claim as expenses:  Swimming pool supplies and maintenance, home and holiday decorations, a nativity set, cookbooks, and a television set.  Mr. Langer testified and attempted to explain how these items were related

to the piano teaching business.  His arguments are beyond belief and contrary to all reason.  We need not address each of the disputed items, but we give one illuminating and representative example.  Petitioners argue that $2,446 spent for pool supplies and maintenance are related to Mrs. Langer's piano teaching because the parents of the students would sit by the pool while waiting for their children to finish a lesson.  Pool supplies and maintenance are not ordinary and necessary expenses for Mrs. Langer's piano teaching business.  Therefore, they are not deductible.

Petitioners also claimed an expense deduction for sweaters Mrs. Langer purchased.  Expenses for clothing adaptable for general use are not deductible.  Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Wilbert v. Commissioner, T.C. Memo. 2007-152.  There is no evidence that the sweaters were not adaptable for general purposes, and thus the expense was properly disallowed.

As to the other "incentive programs" expenses, petitioners presented either only Mr. Langer's vague, self-serving, uncorroborated testimony or no evidence at all.  Accordingly, we find that petitioners are not entitled to the deductions for "incentive programs" beyond those respondent allowed.[3]

---

[3]We note that one of the disputed expenses, amounts paid for home security, is deductible.  However, it must be allocated to the personal and business portions of the residence.

B.    Expenses Related to the Investigations Business

Petitioners owned a 2000 Mercedes sport utility vehicle which was driven a total of 15,127 miles during 2001.[4]  Mr. Langer claims that 65 percent of the use of the Mercedes was for his investigations business.[5]  Petitioners claimed a $4,297 deduction for "car and truck" expenses and a $1,918 depreciation deduction with respect to the Mercedes in 2001.  Automobile expenses are subject to the strict substantiation requirements of section 274(d).  Petitioners presented no evidence substantiating the business use of the automobile or the expenses paid.  Accordingly, petitioners are not entitled to these automobile-related deductions.

Petitioners claimed a $5,223 deduction for other (non-mortgage) interest accruing on credit cards and other loans, including a loan from their daughter.  The record does not contain the origination dates of the loans, the interest rates, the balance and payment histories, or any of the terms of any of the debts on which the alleged interest expense accrued.  Nor is there any evidence that if the interest was in fact paid, it

---

[4]Petitioners' Forms 4562, Depreciation and Amortization, report that the Mercedes was used to drive only 13,866 miles.

[5]Petitioners argue that the determination made by the Minnesota Office of Attorney General with respect to many of the disallowed deductions is evidence that those deductions are proper.  A determination made by the State of Minnesota is not binding on this Court, nor does it relieve petitioners of their burden of proving respondent's determination is incorrect.

related to the investigations business. Accordingly, petitioners are not entitled to these interest deductions for 2001.

Petitioners claimed a $28,573 expense deduction for "other expenses". A portion of that deduction relates to depreciation and home-office-related expenses discussed below. The "other expenses" also include a $10,901 deduction for "behavior modification" expenses. Mr. Langer testified as to some of the disputed items, most of which are personal and not business expenses. For example, petitioners claimed as expenses the cost of their son's graduation party and flowers given by Mr. Langer to Mrs. Langer and to their daughter for special occasions, such as a birthday and Valentine's Day. Fees paid by Mr. Langer to his college alumni club are rendered nondeductible by section 274(a)(3). The cost of meals allegedly related to Mr. Langer's business was not substantiated as required by section 274(d) and is thus not allowed as a deduction. A crystal vase costing $2,635 purchased to cheer Mr. Langer up after the events of September 11, 2001, and because he likes fresh-cut flowers is also not deductible. A vase kept in one's home can be used for any purpose at any time, and there is no evidence that the vase was used primarily in Mr. Langer's office. Petitioners offered no evidence to substantiate any of the remaining "behavior modification" expenses or $357 of "miscellaneous expenses" claimed. Accordingly, petitioners are not entitled to these claimed expense deductions.

III. <u>Business Expenses Related to Petitioners' Use of Their Residence</u>

In addition to the limitations on business expenses discussed above, section 280A(a) provides that a deduction otherwise allowable is not allowed with respect to the use of the taxpayer's residence.  However, section 280A(c) provides an exception to the general rule:

> SEC. 280A(c). Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--
>
>> (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--
>>
>>> (A) as the principal place of business for any trade or business of the taxpayer,
>>>
>>> (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * *

A.    <u>Use of the Residence by the Businesses</u>

Because there are substantial business and personal motives for the purchase and improvement of petitioners' residence, we must determine what portion of the residence was used regularly and exclusively for petitioners' businesses.  See <u>Intl. Trading Co. v. Commissioner</u>, 275 F.2d 578, 584-587 (7th Cir. 1960), affg. T.C. Memo. 1958-104; <u>Deihl v. Commissioner</u>, T.C. Memo. 2005-287. Combined personal and business use of a section of the residence precludes deductibility.  See generally <u>Sam Goldberger, Inc. v. Commissioner</u>, 88 T.C. 1532, 1557 (1987).

Respondent contends that 315 square feet, or 5.73 percent of petitioners' residence, was used exclusively and regularly as a piano studio and that 400 square feet, or 7.27 percent, was used exclusively and regularly as an office for the investigations business.[6]  Petitioners contend that 27 percent of the premises was used exclusively and regularly for the piano teaching business and 15 percent was used exclusively and regularly for the investigations business.  Mr. Langer testified that the living room, solarium, bathroom, and two separate lounges were used exclusively and regularly for piano teaching.  Specifically, Mr. Langer testified that the students and their parents used the solarium, living room, and lounges while waiting for lessons and that the bathroom was used by students because Mrs. Langer required that they wash their hands before playing the piano.

With respect to the investigations business, Mr. Langer testified that in addition to his office he used a 252-square-foot service area, as well as a 300-square-foot garage to store client records including 15 boxes for one client.

The only evidence petitioners presented to support their contention that these areas were used exclusively and regularly for their businesses is Mr. Langer's uncorroborated testimony,

---

[6]Petitioners argue that respondent's Office of Appeals found that petitioners used 18 percent of the home for the piano teaching business in prior years.  Even if Appeals' determination with respect to prior years was in the record, which it is not, petitioners would not be relieved of their burden of proving their exclusive and regular business use of the residence.

which is not credible.  Accordingly, we find that petitioners used 5.73 and 7.27 percent of their home in connection with their respective businesses.

B.    Depreciation Deductions

Petitioners claim depreciation deductions with respect to their residence as well as improvements to the property that were done in the 1990s.  The piano studio was placed in service in 1984; thus petitioners began to claim depreciation with respect to it at that time.  See Langer v. Commissioner, T.C. Memo. 1992-46.  Depending on the date the property was placed in service in 1984, the piano studio would have been classified as either 15-year property or 18-year property.  Real property (other than low-income housing and property with a class life of less than 12.5 years) placed in service on or before March 15, 1984, is 15-year property.  Real property placed in service after March 15, 1984, is 18-year property.  Sec. 168(c)(2)(D); Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 111(b)(3)(B), 98 Stat. 632.  If the property was 15-year property, a taxpayer could elect to depreciate the property over a period of 15, 35, or 45 years using the straight-line method under section 168(b)(3) or over 15 years using a 175-percent declining balance method under section 168(b)(2).  If the property was 18-year property, a taxpayer could elect to depreciate the property over a period of 18, 35, or 45 years using the straight-line method under section

168(b)(3) or over 18 years using a 175-percent declining balance method under section 168(b)(2).[7]

The record does not show at what point in 1984 the property was placed in service. If it was placed in service before March 15, 1984, petitioners could have, and likely would have, elected to depreciate the property over 15 years. After 1999 no depreciation would be allowed. Accordingly, petitioners have not met their burden of proving they are entitled to a depreciation deduction with respect to the piano studio for 2001.

In 1996 Mr. Langer began using an office in the residence for his investigations business. However, the office had been used by Mrs. Langer's greeting card business since 1984, and petitioners claimed depreciation deductions with respect to the office, thus reducing its adjusted basis.[8] The record does not contain any information with respect to the office's adjusted basis in 1996 or the amount of depreciation claimed with respect to that office before it was put in service as part of the investigations business. Accordingly, petitioners have not met

---

[7]In their brief petitioners showed that on their return they calculated depreciation with respect to their residence using a 20-year period. They now claim that they are entitled to depreciation using a 29.5-year period. Neither 29.5 years nor 20 years is a possible recovery period under the Internal Revenue Code, either in 1984 or in any pertinent year thereafter.

[8]The basis of depreciable property is reduced by the amount of allowable depreciation even if the taxpayer does not claim a depreciation deduction. Sec. 1016(a)(2); sec. 1.1016-3(a)(2)(i), Income Tax Regs.

their burden of proving they are entitled to a depreciation deduction with respect to the investigations office.

We turn to the improvements made to the residence. Improvements to real property are depreciated in the same way that the existing property would be depreciated if it were placed in service at the same time as the improvement. Sec. 168(i)(6)(A). However, the recovery period for the improvement begins on the later of the date the improvement is placed in service or the date the existing property was placed in service. Sec. 168(i)(6)(B).

Petitioners have taken the position that the landscaping done in 1999 was a capital asset requiring depreciation. Depreciation for land is generally not allowed. Sec. 1.167(a)-2, Income Tax Regs. However, land preparation may be subject to depreciation allowance if it is closely associated with a depreciable asset. S. Natural Gas Co. v. United States, 188 Ct. Cl. 302, 412 F.2d 1222, 1230 (1969); Trailmont Park, Inc. v. Commissioner, T.C. Memo. 1971-212. This principle has been applied to allow depreciation for filling and grading swampy land to be used as a lumber yard, Lord & Bushnell Co. v. Commissioner, 7 B.T.A. 86 (1927), and for the clearing, grading, and shaping of land for a mobile home park, Trailmont Park, Inc. v. Commissioner, supra. Any landscaping done around petitioners' residence has not been shown to be so closely associated with

their businesses as to allow a depreciation deduction.[9]  Thus,

petitioners are not entitled to a depreciation deduction with

respect to the landscaping.

Petitioners claim they paid $31,640 for their driveway and

lighting in 1995.  The only evidence petitioners presented

substantiating that amount is Mr. Langer's handwritten notes used

to prepare the return.  Therefore, petitioners have not met their

burden of proving they are entitled to a depreciation deduction

with respect to the driveway and lighting.

Petitioners installed a low-voltage outdoor lighting system

in 1999 at a cost of $9,420.  Because there were substantial

business and personal reasons for installing the lighting, its

cost must be allocated in accordance with petitioners' business

use of the residence, 5.73 and 7.27 percent.  To that extent, the

lighting is nonresidential real property to be depreciated over

39 years using the straight-line method.  Sec. 168(c), (e)(2)(B).

Thus, petitioners are entitled to deduct 5.73 and 7.27 percent of

the cost of the lighting over a 39-year period for the piano

teaching business and investigations business, respectively.

---

[9]We note that the Commissioner has taken the position that
if landscaping would need to be replaced contemporaneously with
the replacement of the related depreciable asset, the landscaping
may also be depreciable.  Rev. Rul. 74-265, 1974-1 C.B. 56.
There is no evidence in the record which would indicate replacing
petitioners' residence would destroy the landscaping.

C.    Mortgage Interest Expense Deductions

Of their $64,238 of mortgage interest paid in 2001, petitioners deducted $13,334 and $14,961 on their respective Schedules C.  The amount of mortgage interest deductible is limited to the business use of the home, 7.27 and 5.73 percent, or $4,670 and $3,681, respectively.[10]  The remaining mortgage interest is allowed as an itemized deduction, subject to the limitations on itemized deductions imposed by section 68(a).

IV.   Penalty Under Section 6662(a)

Section 6662(a) and (b)(1) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of the rules or regulations.  Although the Commissioner bears the initial burden of production and must come forward with sufficient evidence showing it is appropriate to impose an accuracy-related penalty, the taxpayer bears the burden of proof as to reasonable cause, substantial authority, or similar defense to the penalty.  Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet the burden, a taxpayer must present evidence sufficient to persuade the Court that the Commissioner's determination is incorrect.  Higbee v. Commissioner, supra at 447.

---

[10]Respondent conceded that petitioners are entitled to deduct these amounts as interest expenses on their Schedules C. Therefore, we do not address respondent's argument in his reply brief that petitioners are not entitled to deduct interest expenses on their Schedules C because the loans may be equity-based loans used for personal expenses, not business expenses.

Mr. Langer admitted that he did not attempt to investigate the applicable rules and regulations. He admitted that petitioners did not keep certain records for their businesses. Petitioners did not include Form 8829, Expenses for Business Use of Your Home, for either of their Schedules C. Furthermore, petitioners claimed as business expense deductions many obviously personal items. A former Internal Revenue Service agent should have known better. Therefore, we conclude that respondent has met his burden of production.

Petitioners presented no evidence which would indicate the accuracy-related penalty should not be imposed. Accordingly, petitioners are liable for the accuracy-related penalty under section 6662.

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.